Abraham N. Gelleb, J.
The court reserved decision on plaintiff’s motions made after opening statements taken on the record to dismiss as insufficient in law the first defense and counterclaim of rescission, the second defense of duress, and the defense (though not separately stated and labeled as such) that the plaintiff has no standing to bring this action because he is not the real party in interest.
Clarification of the respective positions of the parties has been obtained by analysis of the pleadings, particularly the specific allegations of the counterclaim, by the evidence thus far elicited, the several briefs submitted by the attorneys, and their arguments on the record concerning the issues of the law involved in this case. Determination of the motions is accordingly now in order.
*214 Now, for the purposes of these motions, defendants’ allegations must be assumed to be true, although in fact unequivocally denied by plaintiff. The only issue to be presently decided is their legal sufficiency.
In the first defense and counterclaim it is alleged that on or about May 2, 1961 plaintiff assigned to a limited partnership, of which he was one of four general partners, all his right, title and interest in the agreement of April 10,1961, for the purchase of defendants’ real property known as 111-115 Broadway, the subject matter of this action for specific performance. That prior to and about the time of the making of the contract of purchase the partnership had pursuant to its plan for syndicating the deal solicited and sold participation interests in the property to the public. That it filed an offering statement and prospectus as required by section 352-e of the General Business Law, but that there were in these documents a number of alleged misstatements of fact as well as alleged omissions of material facts, set forth in detail at “ a to k ” on pages 4 to 8 of the answer.
Defendants allege that they became aware of these activities of the partnership shortly before May 1, 1961, and that they were justified in rescinding the agreement of April 10, 1961, and refusing to go through with the sale at the closing set for May 10,1961, on the following grounds :
That, since they had acquired knowledge of the aforesaid activities of the purchaser in alleged violation of section 352-e of the General Business Law, if they sold and conveyed the property as originally agreed, they could be charged with having aided and abetted in said violation of law, and they would subject themselves to liability towards participation interests investing on the basis of the alleged misleading prospectus.
The defendants rely upon Kaiser-Frazer Corp. v. Otis & Co. (195 F. 2d 838) as directly in point.
The purchase contract there involved was held to be unenf or tibie as in violation of the laws of the United States and in contravention of public policy, but the fact-situation was strikingly different from that in this case. The parties bad entered into a stock underwriting agreement under which the defendant Otis & Company agreed to buy stock from plaintiff Kaiser-Fra.zer at a certain price, to be sold in turn to the general public at higher prices.
Among the conditions stated was the requirement that the registration statement including the prospectus comply with the act and the regulations of the SBC. The court found that the *215 prospectus was misleading and held that the underwriting purchase agreement was not enforcible,
In that case, as Judge Augustus Hand pointed out (p. 844), the prospectus “ formed an integral part of the contract ”, and the sale of the stock to Otis & Company by Kaiser-Frazer, though it involved directly only a sale to the underwriters, ‘ ‘ was but the initial step in the public offering of the securities which would necessarily follow.”
In other words, an underwriting contract as such is ‘ ‘ necessarily ” followed by a public offering and the contract in question was therefore held to be “ so closely related to the performance of acts forbidden by law as to be itself illegal.”
The clear implication in the Kaiser-Frazer opinion is that a r separable and distinct purchase agreement resulting only in the sale therein covered, and not “ necessarily ” followed by a public offering, would not violate the law and would be enforcible according to its terms.
That would be the situation if, as here, Kaiser-Frazer had purchased some plant and independently proceeded to make a public offering of stock in connection with that purchase, filing a misleading prospectus. The obligation of the plant owner to perform his contract could not be affected by the fact that Kaiser-Frazer had decided on a public offering. Such a situation is entirely different from an underwriting deal which contemplates and necessarily involves a public offering.
Here we have a simple situation of the sale of real property and not a special underwriting contract. So long as the seller is not involved in the buyers’ syndicating activities or in the buyers’ alleged misrepresentations to participation interests, he cannot be subjected to liability therefor.
The remedy for a violation of section 352-e of the General Business Law is a prosecution by the Attorney-General and/or a civil suit by the investors, but only against those responsible for the misleading prospectus.
Defendants also argue that they might be held liable to investors on the theory that having received the fruits of the alleged improper acts with notice of the improper acts by which the purchase moneys were obtained, these may be recovered from them, as in the case of stolen property which may be followed by the rightful owner. But here title to the moneys would pass to defendants. No analogy to the larceny situation is discernible by the court.
Actually, such a claim of rescission is a strange one to be asserted by a seller of property. The only occasion for fearing *216 possible claims on the part of investors would be if the deal were a bad one for the buyer, but this would mean that the deal was a good one for the seller; in which case, why should he wish to rescind the sale ?
On the other hand, if the deal were a bad one for the seller, which would naturally be the motivation for his attempted rescission, it would necessarily be a good deal for the buyer and there would be no reason for fearing any suits by participation interests. The defense can be characterized as a sanctimonious one with no basis in reality.
¡Parenthetically, the effect, if I should hold such a defense and counterclaim valid, would be to place on every seller of real estate, which is bought for syndication or which is syndicated after making of the contract and before title, the burden and responsibility of seeing to it that the syndication prospectus is correct and truthful; otherwise the seller would be subject to possible liability to the syndicate participants. J That just cannot be the law and it would open the door to unfounded claims and litigation in the real estate field.
If the courts were to sustain such legal position and hold that a seller of real estate has such legal obligation, it would open the door to every purchaser who became dissatisfied with his purchase before title to issue a false or misleading prospectus and thereby in effect force the seller to require rescission of the contract, resulting in the return of the deposit, unless the seller was prepared to run the risk of lawsuits by participants for alleged fraud and misrepresentation in the prospectus.
Defendants also allege in their counterclaim as a basis for rescission the alleged failure of plaintiff to make the part payment of $100,000 on or before the 1st day of May, 1961, in accordance with the terms of agreement, i.e., as defendants interpret them, in legal tender. The payment was first made by check and was promptly redelivered to defendants as a certified check when returned by them. Defendants urge that this is not legal tender. There is no disputed issue of fact as to payment. Defendants raise only a legal issue on this question of legal tender.
The contract stipulation as to the form of all payments as well as the prior acts of defendants establish that the payment of $100,000 was made in accordance with the terms of the agreement.
The down payment of $500,000 was stated to be by check subject to collection. The next two installment payments of $250,000 and $100,000, were not specified whether to be check or cash, and the final payment of $536,399.20 plus certain sums *217 was to be by cashier’s or good certified check drawn on a New York City Clearing House bank. It is apparent that the two intermediate payments were not required to be made as strict legal tender but could be made by certified check.
Defendants received a check for the $250,000 payment, certified it, and retained it. When they returned the $100,000 check as not legal tender, plaintiff had a reasonable time to redeliver the check in certified form and the defendants could have no valid complaint as to the form of the payment. Moreover, equity would not permit a forfeiture of plaintiff’s contract rights on the technical grounds here asserted.
Now in this first defense, defendants also make certain allegations which they claim raise the issue that plaintiff is not the real party in interest, and has no standing to bring this action. Treating this as if it had been asserted, as it should have been, in a separately stated defense, the court finds no merit in defendants’ contention.
Section 210 of the Civil Practice Act expressly permits a person with whom or in whose name a contract is made for the benefit of another, to prosecute an action thereon, even though he is not the real party in interest. That is being done every day with respect particularly to real estate contracts.
Moreover, plaintiff received a reassignment from his partnership of all right, title and interest in this agreement shortly before closing day. Defendants’ argument that this constituted a surrender of partnership assets by the act of one partner and therefore unauthorized, is wholly irrevelant in view of the nature of the transaction and the acts of assignment and reassignment between contract date and closing date.
The motion to dismiss the first defense and counterclaim is accordingly granted in all respects. However, with respect to the motion to dismiss the second defense of duress, since such a defense is valid, if there is proof of threats of litigation based on wholly unfounded and meritless claims, defendants will be given the opportunity to present their evidence on this aspect of the case. That motion is accordingly denied.