Argued April 21, reversed May 12, 1975

JET SET TRAVEL CLUB ET AL, *Petitioners, v.*
CORPORATION COMMISSIONER OF THE
STATE OF OREGON ET AL, *Respondents.*

535 P2d 109

*Michael H. Schmeer,* Portland, argued the cause
for petitioners. With him on the brief were Black,
Kendall, Tremaine, Boothe & Higgins, Portland.

*Al J. Laue,* Assistant Attorney General, Salem,
argued the cause for respondents. With him on the

brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

THORNTON, J.

Petitioners appeal from an order of the Corporation Commissioner directing certain persons to cease and desist from offering or selling memberships in Jet Set Travel Club (Jet Set) until such memberships are registered in Oregon pursuant to what is commonly referred to as the Oregon Blue Sky Law (Oregon Securities Law, ORS ch 59).

Petitioners contend that the Commissioner erred in concluding that (1) memberships in Jet Set constitute securities, (2) petitioner Fred Sessions offered or sold Jet Set memberships in Oregon, and (3) petitioners Ben T. Sessions and Fred Sessions made untrue representations or failed to disclose material facts; and further that the Commissioner erred in deciding the matter after having had prehearing and ex parte contact with regard to the questions in issue.

Jet Set is a nonprofit corporation, organized under the laws of Washington in 1970 for the purpose of owning and operating an airplane in order to provide vacation travel for its members. The club scheduled flights to fixed destinations. Members were permitted to reserve space on any flight on a first-come, first-served basis; however, scheduled flights were often canceled if there were insufficient reservations. Members, in addition to membership fees, paid approximately one-half the cost of commercial airline fares for their flights. Flights were limited to particular dates and destinations. Membership also included participation in certain social activities spon-

sored by the club, including parties, ground accommodation packages and social activities at some destinations. Memberships in Jet Set were transferable.

After Jet Set was incorporated in 1970 "select memberships" were sold for a price of $1,000. The proceeds from the sale of these memberships were placed in escrow until Jet Set secured the use of an airplane. Approximately $70,000 was raised from the sale of these memberships, which were lifetime and nontransferable in nature, and entitled the holder to fly on any Jet Set flight for $20. These memberships were also subject to monthly dues. An additional $26,-000 was also obtained during this time as a result of a promotional campaign with the Seattle area European Health Spas.

In June 1971 Jet Set, through a lease-option agreement with Fred Sessions and Ben T. Sessions, secured the use of an airplane. The first flight by Jet Set was in July 1971.

In June 1972 the first memberships in Oregon were sold, approximately one year after club flights had started. "Select memberships" were not offered in Oregon. Approximately 642 memberships were sold in Oregon from June 1972 to May 31, 1974, for a sum of approximately $158,000.

The threshold issue of this review is whether a membership in Jet Set constitutes a security within the meaning of ORS ch 59.

ORS 59.015(13)(a) defines a security as:

" 'Security' means a note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in a pension plan or profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription,

transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under such title or lease, or, in general, any interest or instrument commonly known as a 'security,' or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase any of the foregoing."

The statute does not expressly include membership in an organization such as Jet Set in the definition of security. The Commissioner, however, contends that such a membership is an "investment contract," and therefore is a security.

To aid us in determining whether this particular financial activity constitutes an offer of an "investment contract" we turn to certain tests adopted by our courts in cases of this kind.

■ In *State v. Consumer Business System*, 5 Or App 19, 482 P2d 549 (1971), this court stated that courts may utilize the "common enterprise" test,[1] or courts may utilize the "risk capital" test.[2] Since the Commissioner does not contend that Jet Set memberships constitute "investment contracts" under the "common enterprise" test, we will confine our discussion to the proper application of the "risk capital" test.

---

[1] A test articulated in S. E. C. v. Howey Co., 328 US 293, 298-99, 66 S Ct 1100, 90 L Ed 1244 (1945), and used by Oregon courts. Sperry & Hutchinson Co. v. Hudson et al, 190 Or 458, 468, 226 P2d 501 (1951). In order to find an "investment contract" under the "common enterprise" test two conditions must exist: (1) a common enterprise and (2) hoped-for profits for the investor must result solely from the efforts of others. State v. Consumer Business System, 5 Or App 19, 24, 482 P2d 549 (1971).

[2] For a discussion of the risk capital test, *see,* Spencer, *Private Placement of Securities in Oregon: The Legal Framework,* 54 Or L Rev 131, 139 (1974).

*State v. Consumer Business System,* supra, adopted the "risk capital" test in Oregon. In that case the court held that

> "* * * if a substantial portion of the initial capital which a franchisor uses to initiate its operations is being provided by the franchisees, then the franchisor must register his enterprise under the Oregon Securities Act." *State v. Consumer Business System,* supra at 29.

Although *Consumer Business* involved a franchise operation, the test is applicable to the case at bar. In applying the "risk capital" test to the facts of the present case, if we find that a substantial portion of the initial capital which Jet Set used to initiate its operation was provided by memberships sold in Oregon, it follows that the memberships in Jet Set are "investment contracts" and are subject to registration under the Oregon Securities Act as securities.

■ We have searched the record and conclude that the initial capital used by Jet Set to initiate its operations was not provided by memberships sold in Oregon. Jet Set had been flying scheduled flights for a full year before any memberships were sold in Oregon. The money provided by the sale of the "select memberships" in Washington, plus the money from the promotional agreement with the Seattle area spas, provided at least a part of the initial operating capital. "Select memberships" were not sold in Oregon, nor was the promotional agreement extended to Oregon. Jet Set was a fully operating organization by the time the first memberships were sold in Oregon.

An opposite result would be inconsistent with the reasoning of *Silver Hills Country Club v. Sobieski,* 55 Cal2d 811, 13 Cal Rptr 186, 361 P2d 906 (1961), from which this court in *Consumer Business* adopted the "risk capital" test. *Silver Hills* involved a situation where promoters of a new country club sought to

raise extra capital necessary to complete the financing of the business venture by selling memberships. Even though the memberships were rights to share only the club's facilities rather than profits or assets, the court found them to be subject to securities laws. In reaching its conclusion the court reasoned that:

"We have here nothing like the ordinary sale of a right to use existing facilities. Petitioners are soliciting the risk capital with which to develop a business for profit. The purchaser's risk is not lessened merely because the interest he purchases is labelled a membership. Only because he risks his capital along with other purchasers can there be any chance that the benefits of club membership will materialize." *Silver Hills Country Club v. Sobieski*, 55 Cal2d at 815, 361 P2d at 908.

The case at bar is different from *Silver Hills* and *Consumer Business* in that the memberships are nothing more than a sale of a right to use existing facilities. The requirements of the "risk capital" test are not fulfilled because the benefits of the membership have materialized and have been realized by other members prior to any capital raised by the sale of Oregon memberships.[9]

We conclude that the Jet Set memberships sold in Oregon are not "investment contracts" and are not subject to registration under the Oregon Securities Law. Because of our decision with respect to the first assignment of error, we find it unnecessary to take up petitioners' other assignments of error.

Reversed.

---

[9] Other states have held that memberships in organizations in which members have no interest in assets or profit are not a sale of a security. In Creasy Corporation v. Enz Bros. Co., 177 Wis 49, 187 NW 667 (1922), the court held that memberships in an association by which members were given a right to purchase goods from the association at a small stipulated percentage above cost, but with no other interest, did not constitute a security. *See also,* Lewis v. Creasey Corporation, 198 Ky 409, 248 SW 1046 (1923); Hacker v. Goldberg, 263 Ill App 73 (1931).