OPINION OF THE COURT
Hancock, Jr., J.
We must decide whether plaintiff, All Seasons Resorts, Inc. (ASR), in marketing memberships in a system of outdoor resort campgrounds, is offering securities to the public so as to require compliance with the registration provisions of section 352-e of New York’s "Blue Sky” Law, the Martin Act (General Business Law art 23-A).[1] ASR is a Washington corporation authorized to do business in the State of New York. It neither operates campgrounds nor solicits memberships in New York, but it desires to do both. In the declaratory judgment action before us, ASR seeks to enjoin the Attorney-General from applying the statute to it and requests a determination that *85 the memberships it offers to the public are not securities under General Business Law § 352-e.
I
ASR owns and operates campgrounds for the use and enjoyment of its members in seven States outside of New York. Each campground contains parking sites for recreational vehicles improved with facilities for providing electrical, water and sewer services. In addition, at a typical campground ASR provides a general store, a recreational hall, a swimming area and facilities and equipment for various athletic and recreational activities. The rights and obligations of the members are spelled out in the membership agreement, the certificate of membership and a question and answer sheet.
Membership, as defined in the membership agreement, constitutes "only a license for nonexclusive use of such recreational facilities as may be provided from time to time by ASR”. The certificate of membership provides that a member "is entitled to use all present and future resorts available through ASR for the benefit of its membership as a whole, wheresoever such resorts are located * * * ASR may purchase, lease, operate, or otherwise make such resorts available. The location and nature of all such resorts and the properties, existing or intended, are subject to change by ASR but ASR agrees to use its best efforts to maintain or improve the existing quality of such properties and resorts * * * All such resorts will be developed in such manner as ASR may deem suitable for the enhancement of enjoyment and recreational value, provided, however (1) ASR shall be under no obligation to increase the number of resorts; and (2) ASR may dispose of resorts at any time and in any manner deemed appropriate by ASR, provided however, in such event ASR will provide alternate resort facilities.”
By specific terms of the agreement, members acquire no "legal or beneficial interest in ASR or its assets” and no "right or interest in property, contract rights or business of ASR”. Members are not entitled to "any share of income, gain or distribution by or of ASR”. Nor do members acquire "any voting rights in ASR or pertaining to its business” or any right to participate in ASR’s management.
In the agreement a member represents that he is acquiring the membership solely for his personal enjoyment and that of his immediate family and "not for resale or profit and that *86 [the] membership has not been represented or sold * * * as an investment opportunity.” To prevent the acquisition or sale of memberships for investment purposes, the agreement imposes restrictions upon the alienation of memberships. For the first two years a membership may not be transferred at all, except to family members by operation of law. It may not, in any event, be transferred more than twice and may be sold only once. The price paid on a transfer may not exceed the original purchase price plus the reasonable cost of the transfer.
The question and answer sheet provided to prospective members includes the following:
"does my membership represent a good investment?
"Only as an investment in your future outdoor recreational needs. ASR is selling use, not investment.”
Members must pay an initial fee which ranges from $4,495 to $6,095 depending upon which, if any, of certain optional features they purchase. Annual dues are $152. Increases in the dues are limited to the yearly increase in a specified consumer price index.
The Attorney-General moved to dismiss pursuant to CPLR 3211 (a) (7) and ASR cross-moved under CPLR 3211 (c) for summary judgment. Special Term concluded that ASR memberships are not participation interests or investments in real estate or cooperative interests in real estate as those terms are used in section 352-e (1) (a) and that the memberships do not come within the statute’s general definition of "securities”. The court declared that the registration requirements of section 352-e did not apply and granted injunctive relief. The Appellate Division reversed, noting that the Martin Act is a remedial statute which should be liberally interpreted. It held that, although a membership did not include the right to share in any profits and entailed no ownership interest in any of the assets of ASR, it should, nevertheless, in view of the large size of the initial fee, be construed as a participation interest in real estate within the sense of that term in section 352-e (1) (a). Plaintiff appeals as a matter of right (CPLR 5601 former [a] [ii]). For reasons hereinafter stated, we now reverse and reinstate the judgment of Special Term.
II
In construing section 352-e (1) (a), we are mindful that the statute, as part of New York’s Blue Sky Law, should be liberally construed to give effect to its remedial purpose of *87 protecting the public from fraudulent exploitation in the offer and sale of securities (see, People v Federated Radio Corp., 244 NY 33, 38; Mihaly & Kaufmann, Practice Commentary, McKinney’s Cons Laws of NY, Book 19, General Business Law art 23-A, pp 9-13; see also, Securities & Exch. Commn. v Joiner Corp., 320 US 344, 353). In our application of the statute, we find it appropriate to consider as persuasive authority the decisions of the United States Supreme Court and other Federal courts construing the Federal Blue Sky Laws (Securities Act of 1933, § 1 et seq., 15 USC § 77-a et seq.; Securities Exchange Act of 1934, § 1 et seq., 15 USC § 78-a et seq.; see, Dunwoody Country Club v Fortson, 243 Ga 236, 253 SE2d 700, 703). Although the language of the State and Federal statutes is not identical, the remedial purpose is the same (see, Matter of Gardner v Lefkowitz, 97 Misc 2d 806, 812), and section 352-e (1) (a), we note, makes specific reference to the Federal Securities Act of 1933. (See also, NY State Div of Housing, Memorandum of Apr. 19, 1960 recommending adoption of § 352-e and describing the bill as covering intrastate “real estate syndicates and cooperative ventures of the type to which the [SEC] rules and regulations apply”.)
Because the sole issue is whether ASR memberships are “securities” within section 352-e, our analysis must start with an examination of the definition of “securities” in the statute itself (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 94). The pertinent statutory language is as follows: “securities constituted of participation interests or investments in real estate, mortgages or leases, including stocks, bonds, debentures, evidences of interest or indebtedness, limited partnership interests or other security or securities as defined in section three hundred fifty-two of this article, when such securities consist primarily of participation interests or investments in one or more real estate ventures, including cooperative interests in realty” (General Business Law § 352-e [1] [a]).
The definition includes a list of specific categories of interests or instruments which constitute securities and, in addition, a general category of “securities as defined in section [352[2]].” Accordingly, we must determine both whether the ASR membership falls within one of the specific categories *88 and, if not, whether, on examination of its characteristics in the light of decisional law, it meets the broader general definition of "securities” in section 352.
This two-fold analysis dictated by the statutory language comports with the analysis employed by the Supreme Court for determining the existence of a security (see, Landreth Timber Co. v Landreth, 471 US 681,685-689; United Hous. Found. v Forman, 421 US 837,848-851; Tcherepnin v Knight, 389 US 332, 336; Securities & Exch. Commn. v Howey Co., 328 US 293, 298). Whether the label of a particular interest and the description given to it by the parties brings it literally within one of the enumerated categories in section 352-e is not determinative (see, Landreth Timber Co. v Landreth, supra, at pp 686-687; United Hous. Found. v Forman, 421 US 837, 850-851, supra). We must go beyond the "literal test” and — applying a flexible and adaptable approach (see, Securities & Exch. Commn. v Howey Co., supra, at p 299) — "look to the function of [the ASR membership], to search for substance over form with emphasis on economic reality ” (Matter of Avon Prods. v State Tax Commn., 90 AD2d 393, 395), to see if it displays the characteristics of "securities” in the general sense of the term as used in sections 352 and 352-e (see, Landreth Timber Co. v Landreth, supra, at pp 685-689; United Hous. Found. v Forman, supra, at pp 848-851; Tcherepnin v Knight, supra, at p 336; Securities & Exch. Commn. v Howey Co., supra, at p 298; Daily v Morgan, 701 F2d 496, 499).
Ill
 In examining the specific categories in section 352-e (1) (a), it is apparent that only two can be applied to ASR memberships: (1) the category of "participation interests or investments in one or more real estate ventures” and (2) the included subcategory, "cooperative interests in realty”.[3] ASR memberships fall within neither. An ASR membership is not an investment as the term is commonly understood. Whether we refer to the dictionary definition[4] or to the meaning as *89 cribed to the term in the cases, it is clear that the sine qua non of an investment is the expectation of financial profit or return (see, e.g., United Hous. Found. v Forman, 421 US 837, 851-852, supra; Weaver v Marine Bank, 637 F2d 157, 162, revd on other grounds 455 US 551; Matter of Gardner v Lefkowitz, 97 Misc 2d 806, 812-814, supra; Mihaly & Kaufmann, Practice Commentary, McKinney’s Cons Laws of NY, Book 19, General Business Law art 23-A, p 13). An ASR member receives no profit, shares in no gain, and acquires no interest in ASR’s assets. Clearly, the ASR membership cannot be classified as a security for having the essential characteristics of an investment (see, Matter of Waldstein, 160 Misc 763, 767).
Similarly, because the members obtain no rights to share in any profits or gains, ASR memberships cannot constitute "participation interests in real estate”. It is significant that "participation interests” are treated in the statute not as a separate category but as being equivalent to and virtually synonymous with "investments”. Wherever the words "participation interests” appear in the statute they are paired with the word "investments” in the phrase "participation interests or investments”. Moreover, the statute specifically characterizes the interests as being participation interests "in real estate ventures’[5] (§ 352-e [1] [a]; emphasis added). The use of the word "ventures” provides further support for the conclusion that what is meant by "participation interest” is an investment for financial gain.
Consistent with what appears to be the meaning attributed to the term in the statute, various courts have used the terms "participation” and "participation interests” as descriptive of forms of ownership in which the expectation of sharing of profits is an essential element (see, Reiter v Greenberg, 21 NY2d 388; Weaver v Marine Bank, 637 F2d 157, 161-162, revd on other grounds 455 US 551, supra; A.N.S. Props. v Gough Indus., 102 Ariz 180, 427 P2d 131, 133; Sperry & Hutchinson v Hudson, 190 Ore 458, 226 P2d 501, 505). Indeed, "participation” appears in the decisions most often when applied to *90 shares in limited real estate partnerships or real estate syndicates. In Reiter v Greenberg (supra), for example, we referred to shares in a syndicate formed to acquire real estate for investment purposes as "participating interests” (id., at p 390). (See also, Steingart v 21 Assoc., 31 Misc 2d 212, 214; Freeze v Smith, 254 Mich 386, 236 NW 810; Conroy v Schultz, 80 NJ Super 443, 194 A2d 20 [all applying the term "participation interests” or "units” to real estate syndicates].)
It is in this sense (i.e., as descriptive of participating interests in limited partnerships or syndicates) that, we believe, the term is used in section 352-e (1) (a). Such construction is consistent with the usual meaning of the term, with its use in the statute in conjunction with the terms "investments” and "real estate ventures”, with the title of the statute "The Real Estate Syndicate Act”, and with the statutory purpose in protecting the public from fraudulent exploitation in the marketing and sale of securities and speculative investment schemes (see, People v Lexington 61st Assoc., 38 NY2d 588, 595; People v Federated Radio Corp., 244 NY 33, 38, supra; Matter of Gardner v Lefkowitz, 97 Misc 2d 806, 809, supra; Mihaly & Kaufmann, Practice Commentary, McKinney’s Cons Laws of NY, Book 19, General Business Law art 23-A, pp 7-13). We hold, then, contrary to the conclusion of the Appellate Division, that ASR memberships do not amount to "participation interests or investments” in real estate ventures (§352-e [1] M).
Nor do the ASR memberships fall within the term "cooperative interests in realty” estate. From its use elsewhere in our statutory law, the phrase "cooperative interests in realty” estate has acquired a meaning which includes cooperatives, as the term is usually understood, condominiums and interests in real estate owned through homeowner associations (see, Condominium Act, Real Property Law art 9-b, § 339-ee; General Business Law § 352-e [2-b]). ASR memberships do not fit any of these forms of interests in real property.
A person having a cooperative interest in real estate (e.g., a tenant-shareholder in a cooperative apartment) typically owns stock in a cooperative corporation and has a "proprietary” leasehold granted by the corporation (see, Matter of State Tax Commn. v Shor, 43 NY2d 151, 154; Matter of Payson v Caputa, 9 AD2d 226, 232; People ex rel. McGoldrick v Sterling, 283 App Div 88, 90-91; 19 NY Jur 2d, Condominiums and Co-operative Apartments, § 47). The characteristics of condominium owner *91 ship are individual ownership of a unit, an undivided interest in designated common elements, and an agreement among unit owners regulating the administration and maintenance of the property (see, Kaufman & Broad Homes v Albertson, 73 Misc 2d 84; 19 NY Jur 2d, op. cit., § 9). A homeowners association is another form of ownership of property by the individual. Ordinarily, the association holds title to the property and the homeowners derive their ownership through shares of interest in the association (see, General Business Law § 352-e [2-b]; 13 NYCRR 22.1 [a] [3]; see, e.g., People v Development Servs., 92 Misc 2d 759).
Membership in ASR does not convey a cooperative interest or a condominium interest because the members hold no stock in ASR and no ownership or leasehold interest in or right to exclusive possession of any of its property. Moreover, the characteristics of ownership through a homeowners association are simply not present. The common element in all of these forms of cooperative ownership — that the individual holds some ownership interest in the property — is absent. Indeed, by the very terms of the agreement, an ASR membership can constitute "only a license for nonexclusive use of * * * recreational facilities”.
We conclude, then, that ASR memberships are neither "participation interests or investments” in real estate ventures nor "cooperative interests in realty” within the meaning of section 352-e (1) (a).
IV
The next question is whether the ASR memberships are securities in the general or common-law sense as the term is used in the broad category "securities” in sections 352 and 352-e (1) (a). Although our court has not defined the term "securities”, there is ample authority in the decisions of lower courts in our State and the courts of other jurisdictions (see generally, What Constitutes an "Investment Contract” Within the Meaning of State Blue Sky Laws, Ann., 47 ALR3d 1375, 1382; Coffey, Economic Realities of a "Security”: Is There a More Meaningful Formula?, 18 W Res L Rev 367, 377 [1967]; Mihaly & Kaufmann, Practice Commentary, McKinney’s Cons Laws of NY, Book 19, General Business Law art 23-A, p 15; and see, Meagher v Metropolitan Life Ins. Co., 119 Misc 2d 615, 618; Matter of Gardner v Lefkowitz, 97 Misc 2d 806, 812-813, supra; Matter of Waldstein, 160 Misc 763, 767, supra). *92 The most often cited test for determining whether a given interest is a security, and one that has been adopted in New York (see, Matter of Gardner v Lefkowitz, supra, at p 813; Mihaly & Kaufmann, op. cit., p 15), is that enunciated by the Supreme Court in the seminal case of Securities & Exch. Commn. v Howey Co. (328 US 293, 297-298, supra; see, Payable Accounting Corp. v McKinley, 667 P2d 15, 19 [Utah 1983]). The so-called "Howey test”, as restated by the Supreme Court in Landreth Timber Co. v Landreth (471 US 681, 689-691, supra), is whether "looking at the economic realities, the transaction 'involve[d] an investment of money in a common enterprise with profits to come solely from the efforts of others (328 U.S., at p 301)’ ”. (See, various rephrasings and interpretations of the "Howey test” in United Hous. Found. v Forman, 421 US 837, 847-853, 858, supra; Tcherepnin v Knight, 389 US 332, 336-340; Daily v Morgan, 701 F2d 496, 498-499, supra; Khadem v Equity Sec. Corp., 494 F2d 1224,1227-1229; Securities & Exch. Commn. v Turner Enters., 474 F2d 476,481-482; Payable Accounting Corp. v McKinley, 667 P2d 15, 17-19 [Utah 1983], supra; Dunwoody Country Club v Fortson, 243 Ga 236, 253 SE2d 700, 703, supra; Conroy v Schultz, 80 NJ Super 443,194 A2d 20, 24-25, supra; see also, paraphrase of "Howey test” by commentators Mihaly and Kaufmann as posing three questions: "(1) Is there an investment of money? (2) Is the investment in a common enterprise? (3) Are profits expected to result solely from the efforts of others?” [Practice Commentary, McKinney’s Cons Laws of NY, Book 19, General Business Law art 23-A, p 14].)
If we apply the "Howey test” and the definition of profit formulated by the Supreme Court in United Hous. Found. v Forman (421 US, at p 852 ["either capital appreciation resulting from the development of the initial investment” or "a participation in earnings resulting from the use of investors’ funds”]), we must conclude that the ASR membership is not a "security”. For an interest to be a security under Howey, there must be an expectation of financial gain or profit. There is simply none here.
Nor does the membership have the attributes of an investment (see, Matter of Waldstein, 160 Misc 763, 767, supra, defining security as "any form of instrument used for the purpose of financing and promoting enterprises, and which is designed for investment” [emphasis added]). The membership may be transferred only twice and sold once and then, not at a profit. As specified in the ASR question and answer form, *93 ASR "is selling use, not investment.” There is certainly nothing about the ASR membership which would whet the "foolish cupidity” of the "inexperienced, confiding and credulous investor” (see, People v Smith Co., 230 App Div 268, 269).
The Attorney-General, however, asks us to avoid a restrictive application of the tests in Howey and Waldstein. He requests that we adopt instead a broader definition of "security”, one in which risk of loss of the subscriber’s initial value and an expectation of future benefits in excess of that value— instead of the expectation of financial gain or profit — are the essential elements. While the "Howey test” has been applied in New York (see, Matter of Gardner v Lefkowitz, 97 Misc 2d 806, 812-813, supra) and remains the accepted rule in most jurisdictions (see, Ann., 47 ALR3d 1375, 1380, 1382), some States have adopted this so-called "risk capital” test or a version of it (see, e.g., State v Hawaii Mkt. Center, 52 Hawaii 642, 485 P2d 105; State ex rel. Healy v Consumer Business Sys., 5 Ore App 19, 482 P2d 549; Silver Hills Country Club v Sobieski, 55 Cal 2d 811, 361 P2d 906; compare, Jet Set Travel Club v Corporation Commr., 21 Ore App 362, 535 P2d 109; contra, Sauve v K.C., Inc., 91 Wn 2d 698, 591 P2d 1207; see, Ann., 47 ALR3d 1375, 1382; see generally, Coffey, op. cit, 18 W Res L Rev 367).[6] The circumstances in these cases vary, but there is a common pattern: the "risk capital” is furnished not in exchange for immediate benefits but to establish a prospective enterprise; some or all of a subscriber’s initial value is at risk if the enterprise fails; and the subscriber’s payment is made in the expectation that he will enjoy the benefits of the enterprise if and when it is successfully completed (see, e.g., Silver Hills Country Club v Sobieski, 55 Cal 2d 811, 361 P2d 906, supra, the leading California decision articulating the "risk capital” test, which involved the sale of founder memberships to finance the construction of a proposed country club where the promoters had invested only $400 for the down *94 payment to purchase the land; see also, State v Hawaii Mkt. Center, 52 Hawaii 642, 485 P2d 105, supra, applying a "risk capital” analysis where the promoters of a thinly capitalized corporation engaged in the marketing of "Founder-Member Purchasing Contract Agreements” to construct and develop a proposed market center).
Special Term concluded that the ASR membership is not a security under the "Howey test” or the "investment” definition in Matter of Waldstein (160 Misc 763, supra) and, as noted, we agree. Special Term also — while remarking that it was not deciding that the "risk capital” test would be applicable — found that the ASR memberships could not be securities under that rule either, because the members "are buying the right to use the existing campgrounds, and are not merely funding a business venture for a developing business.”[7] (127 Misc 2d 145, 148; emphasis added.) Because we agree with Special Term that the memberships could not constitute securities even under a "risk capital” analysis, we need not decide whether, under other circumstances, the Silver Hills Country Club rule or some variant of it[8] could prove to be a helpful addition to the "Howey test” and Matter of Waldstein (supra) *95 for determining the existence of a security under New York law.
Suffice to say that a "risk capital” analysis, if used, would not affect the result. The memberships being sold are in an established business which operates several campground resorts in seven different States. A member and his family receive the immediate right to use all existing facilities without charge. Although the initial membership fee is substantial, a prospective member is not induced to join by representations that ASR will provide more or better campgrounds in the future. Indeed, the membership agreement specifies that ASR "shall be under no obligation to increase the number of resorts”. To be sure, the value of a membership — purchased in the expectation that the member and his family will for many years enjoy the use of ASR campgrounds — is not free from risk of loss or diminution. ASR is a young business and, as pointed out by Special Term, a member runs the risk that ASR "will go out of business due to poor management, embezzlement, etc., a risk which every business of necessity incurs”. But that is not the same as the risk incurred by one who puts up capital for a new enterprise in return not for what he then receives but for what he hopes to receive when the enterprise materializes. (See, Jet Set Travel Club v Corporation Commr., 21 Ore App 362, 535 P2d 109, in which the court found this distinction determinative in holding that the "risk capital” test was not met.)
We conclude, then, that ASR memberships as described in this record do not fall within any of the statutory categories or within the general definition of securities so as to require registration under General Business Law § 352-e. The order should, therefore, be reversed, with costs, and the judgment of Special Term reinstated.
Chief Judge Wachtler and Judges Meyer, Simons, Kaye, Alexander and Titone concur.
Order reversed, etc.

. "Securities” for purposes of compliance with the Martin Act is defined in General Business Law § 352-e (1) (a). (See, p 87, infra, for pertinent language of the statute.)

. The definition of securities in section 352 — incorporated by reference in the definition of that term in section 352-e — also includes a broad, catchall category of securities. The section 352 definition of securities is, in pertinent part, as follows: "any stocks, bonds, notes, evidences of interest or indebtedness or other securities, including” (emphasis added).

. Section 352-e (1) (a) refers to cooperative interests in realty thus: "participation interests or investments in one or more real estate ventures, including cooperative interests in realty”. (Emphasis added.)

. "Investment” is defined in Black’s Law Dictionary (5th ed) as follows: "An expenditure to acquire property or other assets in order to produce revenue; the asset so acquired. The placing of capital or laying out of money *89 in a way intended to secure income or profit from its employment. Securities & Exchange Commission v Wickham, D.C. Minn., 12 F. Supp. 245, 247. To purchase securities of a more or less permanent nature, or to place money or property in business ventures or real estate, or otherwise lay it out, so that it may produce a revenue or income.”

. Black’s Law Dictionary (5th ed) defines "venture” as follows: "An undertaking attended with risk, especially one aiming at making money; business speculation.”

. In Jet Set Travel Club v Corporation Commr. (21 Ore App 362, 367, 535 P2d 109, 112), the Court of Appeals of Oregon declined to apply the "risk capital” test which it had adopted in State ex rel. Healy v Consumer Business Sys. (5 Ore App 19, 482 P2d 549), noting that the "requirements of the 'risk capital’ test are not fulfilled because the benefits of the membership have materialized and have been realized by other members prior to any capital raised by the sale of Oregon memberships.” In Sauve v K.C., Inc. (91 Wn 2d 698, 591 P2d 1207) the Supreme Court of Washington expressly rejected the "risk capital” test and reaffirmed its adherence to Securities & Exch. Commn. v Howey Co. (328 US 293, 299) (see also, Dunwoody Country Club v Fortson, 243 Ga 236, 253 SE2d 700).

. The Appellate Division held that the membership met the literal definition of participation interests under section 352-e (1) (a) relying on People v Development Servs. (92 Misc 2d 759, 761-762). Accordingly, it did not reach the question whether the membership met the general definition of "securities” and did not refer either to the "Howey test” or Matter of Waldstein (160 Misc 763). While it did not mention the "risk capital” test, the Appellate Division did emphasize the size of the initial required payment and that the value of the membership could be lost because of the possibility of ASR’s financial failure. People v Development Servs. (supra), involved the offering and sale of individual lots of real property where the purchasers were required to become members of a homeowners association which would give them a share in the common support and recreational facilities contemplated for a planned community. We find the case inapplicable.

. For example, in State v Hawaii Mkt. Center (52 Hawaii 642, 649, 485 P2d 105, 109) the Hawaii Supreme Court stated that the "risk capital” test is met whenever: "(1) An offeree furnishes initial value to an offeror, and (2) a portion of this initial value is subjected to the risks of the enterprise, and (3) the furnishing of the initial value is induced by the offeror’s promises or representations which give rise to a reasonable understanding that a valuable benefit of some kind, over and above the initial value, will accrue to the offeree as a result of the operation of the enterprise, and (4) the offeree does not receive the right to exercise practical and actual control over the managerial decisions of the enterprise.” (See, Coffey, Economic Realities of a "Security”: Is There a More Meaningful Formula?, 18 W Res L Rev 367, 377 [1967].)