REGENCY SAVINGS BANK,
F.S.B., Plaintiff,

v.

MERRITT PARK LANDS ASSOCI-
ATES, Loeb Partners Realty and De-
velopment Corp., Tirrem Management
Company, Inc., Nenni Equipment Cor-
poration, and John Does 1–100, the
latter names being fictitious but in-
tending to designate tenants and per-
sons in possession or persons having
an interest in portions of the premises
described in the Complaint herein, De-
fendants.

No. 00 CIV 9820 CM.

United States District-Court,
S.D. New York.

April 5, 2001.

Kenneth S. Yudell, Aronauer, Goldfarb, Sills & Re, L.L.P., New York City, for Plaintiff.

Steven Charles Russo, Sive, Paget & Riesal, P.C., June Diamant, Sukenik, Segal & Graff, p.c., New York City, for Defendants.

## MEMORANDUM DECISION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

McMAHON, District Judge.

Plaintiff Regency Savings Bank, F.S.B. ("Regency") brings a claim for a mortgage foreclosure in the sum of $18,751,685.32 plus interest, attorneys fees, and costs of suit, against defendants Merritt Park Lands Associates ("Merritt"), Loeb Partners Realty and Development Corporation ("Loeb"), Tirrem Management Company, Inc. ("Tirrem"), Nenni Equipment Corporation ("Nenni") and one hundred John Does with an alleged interest in portions of the premises upon which plaintiff seeks foreclosure.

Regency moves for summary judgment on its foreclosure action, and defendants cross-move for summary judgment seeking to dismiss the claim in its entirety, or in the alternative, to dismiss it against any of the defendants to the extent of a claim for a deficiency judgment after foreclosure. This case was originally filed in the Supreme Court of the State of New York, County of Dutchess. It was removed to this Court on December 28, 2000 on the basis of diversity jurisdiction, 28 U.S.C. § 1332(a).

For the reasons stated below, plaintiff's motion for summary judgment is granted and foreclosure is ordered. Defendants' cross-motion for summary judgment is denied.

## FACTUAL BACKGROUND

On or about March 15, 1990, Defendant Merritt Park Lands Associates executed a certain mortgage note ("the Note") in favor of The Penn Mutual Insurance Company ("Penn Mutual") in the principal amount of twenty million dollars ($20,000,000). As security for the Note, Merritt executed a Mortgage entitled "Building Loan Mortgage and Permanent Mortgage" dated March 15, 1990 ("the Mortgage"). The Mortgage is a lien on real property owned by Merritt located in the Village of Fishkill, in Dutchess County, New York.

On February 28, 1998, Penn Mutual assigned its interest to Regency by way of a document called an "Assignment of Liens and Documents" ("the Assignment"). Regency and Pullman Bank & Trust Co. ("Pullman") entered into a Servicing and Participation Agreement whereby Regency sold to Pullman a 100% undivided participation interest in the mortgage.

Pursuant to ¶ 1.01 of the Mortgage, Merritt agreed to "duly and punctually pay or cause to be paid (a) the principal and premium, if any, and interest on the Note at the time outstanding in accordance with the terms thereof and hereof...." (Compl.¶ 21). The Mortgage provides that

an Event of Default shall occur upon "the failure of Mortgagor to pay, within ten (10) days following written notice from Mortgagee, any monetary payment of any kind whatsoever due hereunder." (Mortgage, ¶ 5.01, Compl ¶ 26). Upon the occurrence of an Event of Default, "Mortgagee may at that time or at any time thereafter declare, by written notice to Mortgagor, the Note, and all other Indebtedness secured hereby to be due and payable upon the date specified in such notice and upon such date the same shall become due and payable." (Mortgage ¶ 5.01, Compl. ¶ 27).

The Mortgage further provides that in the event of default, the mortgagee agrees for itself, its successors and assigns, "to thereafter look solely to the property covered by this Mortgage (and the rents and profits therefrom and after any Event of Default) for the satisfaction of the sums secured hereby and the performance of obligations under the Note and this Mortgage, and that in any action to foreclose this Mortgage or to recover any deficiency on the Note secured hereby, Mortgagee shall not enter any deficiency judgment against Mortgagor, or the maker of such Note or their respective heirs, personal representatives, successors or assigns." (Mortgage ¶ 6.11, Diamant Aff. at Ex. 3.) However, Paragraph 6.11 also allows for "carved-out" exceptions—those situations in which the plaintiff could bring a deficiency action against the Mortgagor, the maker of such Note, or their respective heirs, personal representatives, successors or assigns. Those carved-out exceptions include "for damages resulting from ... failure to pay when due taxes, assessments or other similar charges ... fraud or misrepresentation ... [or] failure to comply with the environmental covenants and obligations set forth in this Mortgage." (Id.)

Merritt defaulted on its obligations under the Note and Mortgage by failing to make the monthly payment of principal and interest due thereunder on November 1, 2000. On or about November 10, 2000, Regency provided written notice to Merritt of its failure to make the November 1 payment. By letter dated November 27, 2000, Regency declared that the entire amount due under the Note and Mortgage was immediately due and payable, as permitted under the Mortgage ¶ 5.01. The letter from Regency's counsel provided, in pertinent part:

> Despite due demand, Mortgagor has failed and/or refused to make timely payment of the amounts past due. Accordingly, Regency hereby declares the entire indebtedness secured by the Mortgage [$20,000,000] to be immediately due and payable.

> Please take further notice that pursuant to the Mortgage, from and after the date hereof, interest on all unpaid amounts shall accrue interest at the Default Rate set forth in the Note and Mortgage. This firm is attempting to collect the Mortgage Debt on behalf of our client. Please be advised that any information you provide to this firm may be used to collect the mortgage debt.

(Diamant Aff. at Ex. 1.)

The letter continued on a second page, but the second page began mid-sentence:

> discharged or dismissed or are subject to an automatic stay under the United States Bankruptcy Code, this notice is for compliance and for informational purposes only and does not constitute a demand for payment or any attempt to collect any such obligation. This notice is given pursuant to 11 U.S.C. 362(b), if applicable.

(Id.)

Plaintiff argues that Merritt executed the Note and Mortgage; that Merritt defaulted by failing to make the November 1, 2000 payment; that the total amount due under the Note and mortgage is $18,751,-

685.32 [1]; and that interest had accrued at a rate of $5,982.50 per diem from and after January 22, 2001.

Defendants respond that this case should be dismissed because of procedural defects in the notice of acceleration, and because Pullman should have been joined as a necessary party. Defendants allege that the November 27, 2000 notice of acceleration was procedurally defective because it: (1) failed to include a specified date upon which the Mortgage was being declared due and payable as required by ¶ 5.01 of the Mortgage; (2) the notice was incomplete because the first page ends with the end of a paragraph, while the second page starts in the middle of an unrelated sentence-rendering that portion incomprehensible; (3) official notice of the action was never given because under ¶ 8.03 of the Mortgage notice is deemed to be given two business days "after delivery to a United States Postal Registry Clerk." While not disputing that it was received, defendants argue that the use of plaintiff's attorney's postage meter machine is not the equivalent of giving the notice to a "United States Postal Registry Clerk"; and (4) the summons and notice of pendency were filed on November 29, 2000—a date prior to the actual notice of acceleration, and prior to the "unknown" date upon which the Mortgage was to become due and payable.

## DISCUSSION

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the non-movant. *See Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505. In making its determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the non-moving party must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When opposing a motion for summary judgment, it is not sufficient for the non-moving party to present evidence that is conclusory or speculative, with no basis in fact. *See Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. 2505.

1. Prima Facie Case for Foreclosure

■■■ Under New York law, summary judgment in a mortgage foreclosure action is appropriate where the Note and Mortgage are produced to the Court along with proof that the Mortgagor has failed to make payments due under the Note. *Bank Leumi Trust Co. of New York v. Lightning Park,* Inc., 215 A.D.2d 246, 626 N.Y.S.2d 202 (1st Dep't 1995); *FGH Realty Credit Corp. v. VRD Realty Corp.*, 231 A.D.2d 489, 647 N.Y.S.2d 229 (2d Dep't 1996) (introduction by the plaintiff of note and mortgage and evidence of non-payment establishes prima facie case for foreclosure). Once the plaintiff has established its prima facie case by presenting the Note, Mortgage and proof of default, the Mortgagee

---

**1.** According to plaintiff, through January 22, 2001, the total amount due and outstanding under the Note and Mortgage (exclusive of attorney's fees and costs) was $18,751,685.32; the total outstanding principal balance of the Note and Mortgage was $18,251,686.51; the

outstanding interest due was $496,547.50; and the amount of late fees due was $3,451.31. Plaintiff notes that other costs and expenses included appraisal fees of $8,000.00, and that interest continues to accrue at a rate of $5,982.50 per diem.

has a presumptive right to foreclose which can only be overcome by an affirmative showing by the Mortgagor. *First Nat'l Bank of Highland v. J & J Milano, Inc.*, 160 A.D.2d 670, 553 N.Y.S.2d 448 (2d Dep't 1990) (noting that the appellants failed to produce any credible evidence of fraud, duress, oppressive or unconscionable actions, or bad faith on the part of the Bank which would entitle them to relief from their default).

Plaintiff has presented to the Court the Note and Mortgage, and the execution of those documents has been admitted by the defendants. Non-payment also has been admitted by the defendants, and there is no allegation that plaintiff committed fraud, duress, oppressive or unconscionable actions, or bad faith. *See First Nat'l Bank*, 160 A.D.2d at 671, 553 N.Y.S.2d 448. Plaintiff has further proven the maturity of the Note and Mortgage.

■ Defendants argue that because plaintiff has failed to join an owner of the lien to be foreclosed, this court should grant summary judgment for them. In a mortgage foreclosure, all parties interested in the ownership of the lien to be foreclosed must be joined either as plaintiffs or defendants, and the failure to do so renders the proceeding jurisdictionally defective, requiring dismissal. *418 Trading Corp. v. Moon Realty Corp.*, 285 A.D. 444, 285 A.D. 931, 137 N.Y.S.2d 513 (1st Dep't 1955). Defendants contend that the Pullman Bank & Trust Company ("Pullman") is a necessary and indispensable party because Pullman and Regency entered an agreement that establishes that Pullman has purchased a 100% undivided participation interest in the mortgage, leaving Regency's only real (i.e. economic interest) as that of administrator and servicer of the mortgage, even though Regency still holds record title to the mortgage.

In *418 Trading Corp.*, 137 N.Y.S.2d at 513, the case cited by defendants, the hold-er of a recorded junior participant interest in a mortgage commenced a mortgage foreclosure action without naming the record holder of the mortgage (who was also the senior participant). The Court held that where the holder of a recorded junior interest to a mortgage seeks to foreclose, it must join the holder of the senior participating interest as an indispensable party. *Id.* at 514. In the present case, it was the record holder of the mortgage (Regency) that brought the mortgage foreclosure action. According to defendants, because Regency does not have any "real" interest in the mortgage, Pullman must be joined in the action as the senior participant.

New York Real Property Actions & Procedure Law requires that the following persons be named as a party to a foreclosure action:

1. Every person having an estate or interest in possession, or otherwise, in the property as tenant in fee, for life, by the curtesy, or for years, and every person entitled to the reversion, remainder, or inheritance of the real property, or of any interest therein or undivided share thereof, after the determination of a particular estate therein.

2. Every person having a right of dower or an inchoate right of dower in the real property or any part or share thereof.

3. Every person having any lien or encumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff.

4. Where the mortgage is upon any of the public utilities regulated by the public service law, the public service commission.

(N.Y. Real Prop. Acts. Law § 1311 (McKinney 1979).)

■ Neither party contends that Pullman has an interest in possession of the real property, or a right of dower. Fur-

thermore, this mortgage is not upon any of the public utilities regulated by the public service law. The remaining question is whether a 100% undivided participation interest, such as that of Pullman, is a lien or encumbrance upon the real property.

A participation interest is an investment for financial gain. *See All Seasons Resorts, Inc. v. Abrams,* 68 N.Y.2d 81, 506 N.Y.S.2d 10, 497 N.E.2d 33 (1986). Courts generally use the terms "participation" and "participation interests" as descriptive of forms of ownership in which the expectation of sharing of profits is an essential element. *Id.* Under the Participation Agreement, Regency has the full authority to act for Pullman in connection with the foreclosure action. (Yudell Aff. at Ex. M.) Neither legal nor record title was transferred to Pullman. It holds only an equitable interest in the Note and Mortgage. Legal title and record title to the Note and Mortgage are in the sole name of Regency, and the only right obtained by Pullman is a contract right against Regency. Pullman is only a creditor of Regency—not of Merritt Park—as it is not the record owner of the Mortgage. As such, Pullman does not have a lien or encumbrance on the property itself, and does not need to be named in this foreclosure action.[2]

Plaintiff has satisfied the prima facie case of a foreclosure action, and there is no dispute over any of the material facts. Barring any defenses to the claim, therefore, plaintiff is entitled to summary judgment.

### 2. Defendants' Procedural Defenses

■ Defendants advance a number defenses alleging that the acceleration notice was defective. Defendants contend that the action was defective because Regency (1) did not properly accelerate the mort-

gage debt by failing to provide a specified date; (2) sent an incomprehensible acceleration notice; (3) improperly filed the summons and notice of pendency; and (4) failed to have the notice postmarked by the U.S. Postal Service. When the mortgage matured on January 1, 2001, however, these claims of procedural defects became moot because notice of acceleration was thereafter irrelevant. This Court nevertheless will address and reject defendants' procedural arguments.

### a. No Specified Date

■ Defendants argue that the November 27, 2000 notice was defective because it did not state a "specified date" upon which the Mortgage is due and payable. Paragraph 5.01 of the Mortgage provides that "Mortgagee may at that time or at any time thereafter declare, by written notice to Mortgagor, the Note, and all other Indebtedness secured hereby to be due and payable *upon the date specified in such notice* and upon such date the same shall become due and payable." (Mortgage, ¶ 5.01, Compl. ¶ 27.) (emphasis added). The November 27, 2000 notice states that "Regency hereby declares the entire indebtedness secured by the Mortgage to be *immediately* due and payable." This Court construes plaintiff's demand of payment "immediately" as sufficient to set a specified date.

### b. Incomplete Letter

■ Defendants charge that the November 27, 2000 letter is incomplete because the first page ends with the end of a paragraph, and the second page starts in the middle of an.unrelated sentence. Defendants contend that this renders that portion of the letter incomprehensible and further invalidates it as an effective accel-

---

**2.** To the extent that defendants allege that Penn Mutual still retains an interest in the Note and Mortgage, a review of the Loan

Purchase Agreement makes clear that this is not the case. (Yudell Aff. at Ex. N.)

eration pursuant to Paragraph 5.01 of the Mortgage. I disagree. The material terms were set forth in the letter. Defendants learned that they failed to make timely payment of the amounts past due; that Regency was declaring the entire $20,000,000 indebtedness to be due; that that amount was immediately due; and that interest on all unpaid amounts would accrue at the default rate in the Note and Mortgage. (Diamant Aff. at Ex. 1.) These material terms of the acceleration notice were not impacted by the typographical errors that resulted in some of the text being lost.

### c. Mailing of the Notice and Filing Notice of Pendency

■ Defendants further contend that plaintiff failed to abide by Paragraph 8.03 of the Mortgage which provides that notice of acceleration is deemed given two business days "after delivery to a United States Postal Registry Clerk." The letter was dated November 27, 2000 and arrived in an envelope stamped by postage-meter, dated November 27, 2000. However, it was stamped by plaintiff's attorneys' postage meter machine, not by a U.S. Postal Registry Clerk. Defendants allege that not only was this notice defective on its face under ¶ 8.03, but that plaintiff commenced the foreclosure action prior to the date when defendants would have had notice of the acceleration. The summons and notice of pendency were filed at 10:39 a.m. on November 29, 2000. Because the post-

mark (by the U.S. Postal Service) indicates that the letter was mailed on November 28, the notice of pendency was filed at a time before which defendants likely would have had notice.

■ Plaintiff did not abide by Paragraph 8.03 of the Mortgage by giving delivery of the notice to a "United States Postal Registry Clerk," but defendants do not dispute that they received the letter. It also appears likely that defendants did not have notice of the acceleration before the notice of pendency of filed. However, this will not interfere with plaintiff's foreclosure action. Even if the notice were defective, the action was still properly commenced because notice was not a condition precedent to commencing the action. Paragraph 5.01 of the Mortgage states that an Event of Default occurs upon "the failure of mortgagor to pay, within ten (10) days following written notice from Mortgagee, any monetary payment of any kind whatsoever due hereunder." Paragraph 5.02 of the Mortgage expressly permits the Mortgagee to commence a mortgage foreclosure action "if any Event of Default shall have occurred and be continuing."[3] It does not condition the commencement of a mortgage foreclosure action upon the giving of notice—rather, it permits a foreclosure action whenever "any Event of Default shall have occurred and be continuing." Under New York law, a technical defect in a notice is not a bar to the commencement of a mortgage foreclosure

---

**3.** Paragraph 5.02 provides that: If any Event of Default shall have occurred and be continuing, Mortgagee at any time may, at its election, proceed at law or in equity or otherwise to enforce the payment of the Note at the time outstanding in accordance with the terms hereof and thereof and to foreclose the lien of this Mortgage as against all or any part of the Premises or proceed to take either of such actions, and to have the same sold under the judgment or decree of a court of competent jurisdiction. In any action service of

process may be made upon Mortgagor by certified mail, return receipt requested tat the address set forth on the first page hereof, and such service shall be deemed complete upon the posting of such papers in any mail box regularly maintained by the United States Post Office. Both Mortgagor and Mortgagee hereby irrevocably waive all right to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Mortgage. (Notice of Removal, Mortgage, ¶ 5.02.)

action or the granting of summary judgment thereunder. *Zuckerman v. 234–6 W. 22 St. Corp.*, 167 Misc.2d 198, 645 N.Y.S.2d 967, 971 (1996) (plaintiff's failure to serve a contractually required notice of default prior to commencing action, "although not technically in compliance with the terms of the Mortgage," did not prohibit commencement of the mortgage foreclosure action). Here, Merritt failed to make any monetary payment of any kind within 10 days following the written notice from Regency. Regency therefore had the right under ¶ 5.02 to proceed immediately at law or in equity to enforce payment of the note—with or without notice.

Since the defendants admit that an Event of Default had occurred and was continuing at the time the action was commenced, Regency properly commenced the foreclosure action from a procedural standpoint. Furthermore, when on January 1, 2001, the Mortgage matured, the entire balance became due. None of the procedural defects alleged therefore stand as a bar to foreclosure.

3. Deficiency Claims

Without any proven deficiency, it is premature to discuss who will be responsible for paying a deficiency judgment. Regency's damages, if any, cannot be ascertained until after the foreclosure sale of the Mortgage Premises. If the foreclosure sale yields a sufficient sum to pay Regency's claim in full, then Regency will not have suffered any damages. If the sale yields less than the amount due Regency, then the Court will determine who is liable for a deficiency judgment.[4]

## CONCLUSION

The plaintiff may foreclose on the Fishkill property.[5] If there is no deficiency, then this case will be closed. This Court will retain jurisdiction over this matter in the event that there is a deficiency after the sale of the property. At that time, this Court will consider whether plaintiff may look to the defendants, rather than the property, to satisfy that deficiency under Paragraph 6.11 and its exceptions.

For the reasons stated above, plaintiff's motion for summary judgment is granted, and the plaintiff is directed to submit an order of foreclosure for the Court to sign.

This constitutes the decision and order of this Court.

---

4. While mortgage 6.11 provides that mortgagee must look solely to the property for satisfaction of the sums and performance of obligations under the Note, it also allows for certain "carved-out" exceptions where plaintiff could bring a deficiency action against the Mortgagor, the maker of such Note, or their respective heirs, personal representatives, successors or assigns. Those carved-out exceptions include "for damages resulting from ... failure to pay when due taxes, assessments or other similar charges ... fraud or misrepresentation ... [or] failure to comply with the environmental covenants and obligations set forth in this Mortgage." (Id.)

5. Pursuant to ¶ 5.03 of the Mortgage, the premises—or as much thereof as may be affected by the mortgage—may be sold in one parcel.