OPINION OF THE COURT
Stephen G. Crane, J.
This case represents the first effort by the Attorney-. General of the State of New York to have the criminal sanctions of the Martin Act,[1] section 352-c of the General Business Law, applied to what the parties refer to as “insider trading.”[2] The defendant moves under CPL 170.30 (subd 1, pars [a], [f]) and 170.35 (subd 1, par [c]) to dismiss the misdemeanor information on the grounds that the law *693 allegedly violated, section 352-c of the General Business Law, does not apply to insider trading and the statute, as applied, is unconstitutional.
This accusatory instrument is clear and direct. It alleges that defendant was an attorney and member of a law firm representing issuers of securities in takeovers and mergers. In this capacity he acquired advanced, secret information of prospective takeover attempts and merger transactions. Acting on this information, he bought on the open market through his broker securities of target companies without disclosing his secret knowledge. When the prospective transactions were later announced, the market price of these securities naturally advanced. Thereupon, defendant liquidated his position in these securities and reaped huge profits. The People allege that defendant thus engaged in fraudulent conduct proscribed by section 352-c of the General Business Law.
In support of his motion defendant basically argues that section 352-c of the General Business Law was never intended to apply to insider trading. Rather, he suggests that it is limited to situations involving distribution of securities where the buyer and seller transact face to face or where the defendant is a dealer in such securities. He points to the memorandum of Attorney-General Jacob Javits in support of the legislation in 1955 by which criminal sanctions were inserted in the Martin Act (NY Legis Ann, 1955, p 133). The memorandum concentrated on the inadequacies of pre-existing injunctive sanctions against so-called “boiler room” operations and similar unscrupulous dealings in the distribution of securities. The defendant, thus, contends that section 352-c is limited to fraud in those transactions where privity exists between buyer and seller. To apply it to insider trading where privity is absent, he urges, is beyond the purpose and scope of the Martin Act. Such an application after 27 years takes the defendant by surprise. Since he never had notice of such an interpretation, which is not manifest to him on the face of the statute, he submits that the provision must be struck down as unconstitutionally vague. These arguments do not pass muster.
*694 STATUTORY CLARITY
Section 352-c of the General Business Law, in pertinent part, provides:
“1. It shall be illegal and prohibited for any person, partnership, corporation, company, trust or association, or any agent or employee thereof, to use or employ any of the following acts or practices:
“(a) Any fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale;
* * *
“where engaged in to induce or promote the issuance, distribution, exchange, sale, negotiation or purchase within or from this state of any securities * * *
“2. It shall be illegal and prohibited for any person * * * to engage in any artifice, agreement, device or scheme to obtain money, profit or property by any of the means prohibited by this section.
* * *
“4. A person * * * using or employing any act or practice declared to be illegal and prohibited by this section, shall be guilty of a misdemeanor.”
There is nothing unclear or ambiguous in this language (People v Cruz, 48 NY2d 419). Defendant simply ignores the category of “purchase” and the concept of “exchange” inserted in 1955.[3] His arguments might have merit if the statute omitted these words; but with their inclusion defendant is hard pressed to show ambiguity when section 352-c is applied to his conduct of purchase.
The prosecutor is asking this court to recognize that the language “any fraud, deception, concealment, suppression * * * where engaged in to induce or promote the * * * exchange, sale, negotiation or purchase * * * of any securities” or “to obtain money, profit or property” thereby is both broad enough to embrace defendant’s conduct and precise enough to be constitutional. There is no imprecision in the concept of fraud; it has been applied to insider *695 trading for longer than defendant has been a member of the bar. (Securities & Exch. Comm. v Texas Gulf Sulphur Co., 401 F2d 833, 847-848, cert den sub nom. Coates v Securities & Exch. Comm., 394 US 976, 404 US 1005; Diamond v Oreamuno, 24 NY2d 494, 502.)[4]
VOID FOR VAGUENESS ARGUMENT
Defendant attacks as unconstitutionally vague the application of section 352-c to his alleged insider trading. In view of the conduct with which he is charged, it is doubtful that he has standing to raise this claim. (Cf. People v Di Raffaele, 55 NY2d 234, 241; United States v Wolfson, 405 F2d 779, 783, cert den 394 US 946.) If the statute were uncertain or vague the court would be obligated to construe it in a manner that will avoid constitutional infirmities[5] (McKinney’s Cons Laws of NY, Book 1, Statutes, § 150, subd c). Yet, the legislation that defendant finds vague meets constitutional standards since its meaning is derived from normal everyday usage, common understanding and practice. (United States v Re, 336 F2d 306, 316, cert den 379 US 904; People v Uplinger, 113 Misc 2d 876, 881; People v Cadplaz Sponsors, 69 Misc 2d 417, 419, supra). This suffices to warn defendant of the conduct to be avoided. As the Court of Appeals stated (per Wachtler, J.) in People v Cruz (48 NY2d 419, 423-424, supra): “It is a fundamental requirement of due process that a criminal statute must be stated in terms which are reasonably *696 definite so that a person of ordinary intelligence will know what the law prohibits or commands * * * The concept promotes fairness to the defendant in two respects. First it insures that the defendant will receive adequate warning of what the law requires so that he may act lawfully. ‘The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed’ (United States v Harriss, 347 US 612, 617). Secondly, it serves to prevent arbitrary and discriminatory enforcement by requiring ‘boundaries sufficiently distinct’ for police, Judges and juries to fairly administer the law”. These goals are certainly served by applying to the defendant’s alleged insider trading section 352-c of the General Business Law. Its terms have “an accepted meaning ‘long recognized in law and life’ [that] cannot be said to be so vague and indefinite as to afford the defendant insufficient notice of what is prohibited or inadequate guidelines for adjudication * * * even though there may be ‘an element of degree in the definition as to which estimates might differ’ ”. (People v Cruz, supra, at p 428.)
ESTOPPEL FROM ENFORCEMENT AGAINST INSIDER TRADING
Defendant claims surprise[6] that his conduct should evoke criminal sanctions under the Martin Act (General Business Law, art 23-A) because it has never before been applied to the fraudulent activity known as insider trad *697 ing. This claim is tantamount to an argument that the State of New York, after the 27 years section 352-c has been on the books in its present form, should be estopped from enforcing it now for the first time. Perhaps such a lengthy repose would assist the court in interpreting an ambiguous statute. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 129, subd a.) But where, as here, the legislation is clear, the State cannot be estopped in seeking to enforce it and invoking its criminal sanctions. (See Matter of Hamptons Hosp. & Med. Center v Moore, 52 NY2d 88, 93-94; People v System Props., 281 App Div 433, 441, mod on other grounds 2 NY2d 330; State of New York v New York Movers Tariff Bur., 48 Misc 2d 225, 231; McKinney’s Cons Laws of NY, Book 1, Statutes, § 128, subd b; 21 NY Jur, Estoppel, Ratification and Waiver, §§ 76, 92; Note, Equitable Estoppel of the Government, 79 Col L Rev 551.)
It hardly appears appropriate for defendant, an expert in securities regulation, to assert surprise that his clear violation of Federal antifraud provisions should be held to violate the State antifraud statute that was amended in 1955 in order “more nearly [to] conform our statutes with similar provisions contained in the laws of the more progressive States and the Federal Government.” (NY Legis Ann, 1955, pp 133, 135.)
LEGISLATIVE INTENT
Defendant’s grievance is that section 352-c of the General Business Law should not apply to insider trading because of the purpose of this legislation. He urges upon the court the legislative history limited, however, to the memorandum of the Attorney-General in support of its passage.
The court should not consult its legislative history except to resolve an ambiguity in the wording of a statute *698 (People v Graham, 55 NY2d 144, 151: “[T]he clarity and unambiguity of the language of [the statutes] would have made it inappropriate to delve into what at times is an ill-defined legislative intent * * People v Correa, 113 Misc 2d 919, 924; McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 76, 125, subd b). The defendant argues, however, that legislative history may still be consulted even where the statute is clear. He cites United States v Turkette (452 US 576). But, that case invoked legislative history to support plain statutory language, not as defendant here attempts, to overcome the unambiguous legislation. Justice White emphasized that, if the language is unambiguous, it must be enforced unless it is contradicted by evident legislative intent or it yields absurd results (supra, at pp 580, 587).
Thus, this court has no reason to consult the Attorney-General’s memorandum or any other aspect of the background of the passage in 1955 of chapter 553 adding section 352-c of the General Business Law. Nevertheless, a study of this memorandum shows that it does not perform the task defendant assigns it. True, it concentrates on “boiler room” operations, dealers in securities and distributions. Yet, a fuller reading reveals a broader legislative concern. The drafters intended to bring New York law into conformity with Federal legislation on this subject.[7] Moreover, *699 the memorandum transcends the limited evil to which defendant would restrict this legislation:
“It is intended to provide a deterrent to fraud where no adequate deterrent now exists. It is also felt that the criminal relief so provided may shorten the procedure in stopping the operations of these swindlers. It is my belief that in these respects the amendments more nearly conform our statutes with similar provisions contained in the laws of the more progressive States and the Federal Government.
“These proposed amendments to the statute are not intended to narrow or to repeal the coverage of prior language but rather they are intended to expressly broaden those acts and practices coming within the condemnation of the statute, so as to bring within its scope all acts and omissions which tend to deceive or mislead, based on present day experiences of the fraudulent practices indulged in by certain individuals dealing in securities.” (NY Legis Ann, 1955, pp 133, 135.)
There is no ambiguity in this legislation. Defendant would incorporate some by reference to this infirm memorandum.
INTENT AND SCIENTER
Defendant otherwise argues that Federal antifraud provisions are actionable only if scienter exists, whereas an intent to defraud has been read out of the Martin Act (People v Barysh, 95 Misc 2d 616; cf. People v Concord *700 Fabrics, 83 Misc 2d 120, 124, affd 50 AD2d 787). A fair reading of the information at bar, however, shows that defendant is charged with intentional fraud under the Martin Act,[8] and it is not for defendant to raise a constitutional claim for future defendants not so charged.
In considering the bill that became chapter 553 of the Laws of 1955, the Committee on State Legislation of the Association of the Bar of the City of New York expressed misgivings over the omission of a requirement that a defendant “knowingly” or “wilfully” engage in the prohibited conduct (see bill jacket for L 1955, ch 553). Since the information at bar actually charges knowing conduct, it is unnecessary for me to decide whether such an element is required under section 352-c. In speaking of the omission of “intent to defraud” in section 352-c, Justice Lang in People v Barysh (supra) was not excluding a requirement that the underlying conduct be intentional or knowing. “[T]he intent necessary to support a conviction is merely that of intending to do the acts prohibited, rather than intent to violate the statute.” (United States v Charnay, 537 F2d 341, 357 [Sneed, J., concurring].)[9] While evil motive or scienter may not be an element to prove under State law (People v Barysh, supra, at p 621; People v Concord Fabrics, supra, at p 124; People v Cadplaz Sponsors, 69 Misc 2d 417, 419, supra), the information at bar may be read as charging scienter nonetheless.
Consequently, the case at bar presents no opportunity to rule on the question of whether a scienter requirement is to be read into section 352-c of the General Business Law to conform with Federal requirements. (See Ernst & Ernst v *701 Hochfelder, 425 US 185.) Nevertheless, if I needed to determine this issue, I would be constrained to follow the authority of Barysh (supra), Concord Fabrics (supra) and Cadplaz Sponsors (supra), adopting a less burdensome standard. This standard would require proof only of defendant’s intentional or knowledgeable conduct. In this respect, perhaps, the jurisprudence under section 352-c has parted company with Federal case law in spite of the intent of Attorney-General davits that the Martin Act antifraud provisions “more nearly conform” with their Federal counterparts.
PRIVITY
A privity limitation that defendant reads into section 352-c is supported only by the historical genesis of the Martin Act and not by any language in the statute, as added in 1955. It is true, originally the Martin Act, New York’s Blue Sky Law, was intended to regulate the process of distributing newly issued securities. This process generally involved a seller and his buyer between whom there was privity. Conceptually, of course, the process of distribution could embrace an original fraudulent seller and a remote victimized purchaser between whom many middle persons may have participated. Thus, no privity would exist between the wrongdoer and the victim. This is not a private action for damages. Whatever may be the requirement of privity in such a case (Blue Chip Stamps v Manor Drug Stores, 421 US 723; Herdegen v Paine, Webber, Jackson & Curtis, 31 Misc 2d 104; but cf. Wolfson v Ubile, 78 AD2d 612), the Martin Act is applicable in a criminal prosecution (cf. United States v Newman, 664 F2d 12, 17), where the objective is to punish frauds perpetrated on the general public. (People v Federated Radio Corp., 244 NY 33, 38.) Note also the lack of a privity requirement in enforcement proceedings. (Securities & Exch. Comm. v Texas Gulf Sulphur Co., 401 F2d 833, supra, where, as here, the defendants made purchases on the market on the basis of inside information they knew would elevate the value of their shares once the information became public.) Moreover, the New York Legislature in 1955 had ample opportunity to include a privity requirement. While it was *702 consulting Federal Law, the Legislature could hardly have overlooked section 12 of the Securities Act of 1933 (US Code, tit 15, § 77 l), containing an express privity requirement.[10]
Thus, no sufficient basis exists to interpret section 352-c as defendant urges — limiting its application to transactions where privity is present.
FIDUCIARY RELATIONSHIP
Defendant relies on United States v Chiarella (445 US 222) that holds that a nonfiduciary bears no criminal liability under rule 10b-5 for his insider trading. But, Florentino carries a fiduciary obligation the absence of which, in that case, justified the result.
In counts 1,2, and 3 defendant allegedly acquired shares of clients of his law firm because of his knowledge of nonpublic inside information that promised an enhancement in the value of these shares. Of course, he concealed this information from the selling stockholders to whom he owed a fiduciary duty due to his representation of their corporations. Counts 4, 5, and 6 aver that defendant acquired shares in the targets that his firm’s clients were attempting to acquire; and count 7 alleges that he profited by acquiring shares in an issuer that he knew would not be merging with his firm’s client and in which the client was intending to liquidate its substantial investment. Thus, at least three counts of the information allege facts that establish a fiduciary relationship. That is not to say that defendant’s alleged transactions with respect to the remaining counts did not entail a breach of fiduciary duty. *703 This question I do not find it necessary to reach (but see People v Cadplaz Sponsors, 69 Misc 2d 417, 419, supra, suggesting application of the Martin Act where “the public is exploited”, implying a broader duty of disclosure than that of a fiduciary).
A fiduciary relationship existed in Diamond v Oreamuno (24 NY2d 494, supra) and in Securities & Exch. Comm. v Texas Gulf Sulphur Co. (supra), but was lacking in Chiarella (supra). That relationship described the duty to disclose under subdivision (b) of section 10 of the Securities Exchange Act and rule lQb-5. Chiarella, an employee of a financial printer, was, simply, not an insider. Florentino stands in stark contrast.
In addition, Chiarella was accused of concealing nonpublic information from the shareholders of the targets — those who sold the securities to him. The case was submitted to the jury on the theory that his nondisclosure defrauded only these selling shareholders. The Supreme Court refused to consider whether Chiarella breached a duty of disclosure to anyone else (United States v Chiarella, supra, at p 236).
The question left open in Chiarella was decided adversely to a defendant who traded on inside information in United States v Newman (664 F2d 12, supra). There, it was held that the defendant’s employer (an investment banker) was a victim of defendant’s fraud even though the employer and its clients were neither purchasers nor sellers of the securities (supra, at p 16). In terms of the case at bar, Florentino victimized his law firm and its clients (in counts 4 through 7) to whom he owed the utmost of fiduciary fidelity — even though none of them is alleged to be a purchaser or seller of the securities involved in this case.
There is no requirement under Federal law or section 352-c of the New York General Business Law that the victims of defendant’s breach of confidence be sellers or buyers of securities for the purposes of applying criminal sanctions (United States v Newman, supra, at p 17). To the extent that a fiduciary duty is incorporated as an element of the crime under section 352-c, in conformity with Federal concepts (see Speed v Transamerica Corp., 99 F Supp *704 808; 11C Sowards & Hirsch, Business Organizations — Blue Sky Regulation, § 6.02 [2]), it is amply set forth in the facts alleged in the information before me.
Edgar v Mite Corp.
Since argument of this motion, the Supreme Court has decided Edgar v Mite Corp. (_ US _, 102 S Ct 2629). There, the Illinois Business Take-Over Act (111 Rev Stats, ch 121[1]/2, par 137.51 et seq.), was found invalid as an impermissible burden on interstate commerce not justified by its local benefits (102 S Ct, at p 2643). Justice White did not carry a majority in his opinion for the court, however, on the point that the Williams Act (US Code, tit 15, § 78m, subds [d], [e]; § 78n, subds [d]-[f]) pre-empted the Illinois legislation. While the Illinois statute contained an anti-fraud provision forbidding registration to tender offers that would work a fraud or deceit on the offerees (111 Rev Stats, ch 121V2, par 137.57, subsec E), this aspect of the Take-Over Act was an integral part of the process by which Illinois sought to regulate acquisitions.
Nothing in the Edgar case inhibits the application of section 352-c of the General Business Law to the conduct at bar. The General Business Law does not purport to regulate the process by which takeovers occur in New York State or with respect to corporations formed under its laws. Section 352-c is a broad regulation governing more general conduct. It is a legitimate matter for State concern and neither burdens interstate commerce nor offends the Williams Act. Indeed, in keeping with the objective that the Martin Act more nearly conforms with Federal statutes on the subject, section 352-c is compatible with the antifraud provision of the Williams Act (US Code, tit 15, § 78n, subd [e]), while avoiding the pitfall of the Illinois antifraud provision that was a handmaiden to its offensive scheme of regulating transactions occurring across State lines. The New York provision, on the other hand, remains part of its Blue Sky legislation. This is protected from pre-emption. (Securities Exchange Act, § 28, subd [a]; US Code, tit 15, § 78bb, subd [a]; Leroy v Great Western United Corp., 443 US 173, 182, n 13; see, also, Securities Exchange Act, § 18; US Code, tit 15, § 77r.) Therefore, the Martin Act escapes *705 the vices that resulted in the invalidation of the Illinois Business Take-Over Act.
The motion is denied.

. The Martin Act is New York’s Blue Sky Law. It is embodied in article 23-A of the General Business Law. It was first enacted in 1921 to prevent fraudulent sales of securities “and to defeat all unsubstantial and visionary schemes in relation thereto whereby the public is fraudulently exploited. The Martin Act is * * * directed primarily * * * to the protection of the public to a greater degree than the protection provided by an action for fraud” (54 NY Jur, Securities Acts & Civil Frauds, § 2, pp 111-112). (See People v Federated Radio Corp., 244 NY 33, 38.)

. To be contrasted is the concept of insider trading made unlawful by subdivision (b) of section 16 of the Securities Exchange Act of 1934 (US Code, tit 15, § 78b). Civil liability thereunder is enforceable exclusively in the Federal courts (Securities Exchange Act of 1934, § 27, US Code, tit 15, § 78aa) and, of course, only the Department of Justice through a United States Attorney may prosecute violations thereof made criminal by section 32 (US Code, tit 15, § 78ff).

. The word “purchase” was found in section 352 of the General Business Law before 1955. Chapter 553 added to section 352 the concept “exchange” in 1955; it added the entire section 352-c that year including the words “purchase” and “exchange”.

. In the context of an action by the Attorney-General under article 23-A of the General Business Law, the late- Justice Jacob Markowitz wrote in People v Cadplaz Sponsors (69 Misc 2d 417, 419):
“The Martin Act * * * is fundamentally remedial in character * * * The words ‘fraud’ and ‘fraudulent practice’ as used in the act are given a wide meaning to include all deceitful practices contrary to the plain .rules of common honesty * * * Its purpose is to defeat any scheme whereby the public is exploited.
“Good faith is not the issue * * * All acts tending to deceive or mislead the public, whether or not the product of scienter or intent to defraud, come within its umbrella”.
In enacting section 352-c of the General Business Law, in particular, the Legislature directed that its provisions “are to be liberally construed.” (L 1955, ch 553, § 4.)

. An indefinite criminal statute that fails to give fair notice to permit a person to conform his conduct violates substantive due process. (United States v Harriss, 347 US 612, 617; People v Berck, 32 NY2d 567, 569, cert den 414 US 1093; People v Scott, 26 NY2d 286, 291; People v Byron, 17 NY2d 64, 67; People v Munoz, 9 NY2d 51, 56; People v Vetri, 309 NY 401, 405-406; People v Shifrin, 301 NY 445, 447.)

. A claim not too different was rejected when Louis Wolfson appealed his conviction for violations of the registration provisions of the Securities Act of 1933 (US Code, tit 15, § 77e). The Second Circuit in United States v Wolfson (405 F2d 779, 783, cert den 394 US 946) wrote: “The appellants’ argument that $8 4 and 5 of the Act are unconstitutionally vague does not call for extended discussion. It will suffice to say that appellants’ defense was not that they misunderstood or misinterpreted the statute but that it was beneath their notice and they knew nothing about it. Under these circumstances we need say no more than that any possible uncertainty in the statute need not trouble us now. There will be time enough to consider that question when raised by someone whom it concerns.”
In United States v Charnay (537 F2d 341, 356-357, cert den 429 US 1000), Judge Sneed reluctantly concurred in upholding an indictment for market manipulation under rule 10b-5 (17 CFR 240.10b-5). Pertinent hereto, he declared:
“To protect and preserve honest markets we assert the residual power derived from a broad statute and rule to proscribe conduct surrounding a corporate takeover never heretofore branded improper by judicial decision, Commission rule or determination, or explicit Congressional act. And yet I am convinced that our assertion of this authority is in keeping with existing law * * *
*697 “In this case, we are untroubled by the fact that never before has the section and rule been applied to a similar situation. Furthermore, in fixing criminal liability under section 10(b) and Rule 10b-5, we attach reduced importance to assertions of vagueness. The fact that men of common intelligence — or lawyers and judges for that matter — ‘must necessarily guess at its meaning and differ as to its application,’ does not require that we declare this section 10(b) void for vagueness.” (Emphasis added.)

. Notable in this regard were subdivision (b) of section 10 under the Securities Exchange Act of 1934 (US Code, tit 15, § 78j, subd lb]) and rule 10b-5 (17 CFR 240.10b-5), promulgated thereunder as well as subdivision (a) of section 17 of the Securities Act of 1933 (US Code, tit 15, § 77q, subd [a]). The 1934 act then provided through rule 10b-5:
“It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
“(a) To employ any device, scheme, or artifice to defraud,
“(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
“(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.”
And subdivision (a) of section 17 (as amd) provided:
“(a) It shall be unlawful for any person- in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly —
*699 “(1) to employ any device, scheme, or artifice to defraud, or
“(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
“(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.”
In other words, while subdivision (a) of section 17 inhibits fraud in the sale of securities, because the 1933 act is devoted to the regulation of the distribution process, rule 10b-5 is broader and embraces purchases as well as sales — both sides of a transaction on an exchange or otherwise in the secondary market — a market that comes into existence only after distribution is complete.
Subdivision (e) of section 14 of the 1934 act (US Code, tit 15, § 78n, subd [e]), enacted in 1970 (and, therefore, not in existence when section 352-c of the General Business Law was enacted), broadened antifraud protection even further. It eliminated the purchase-sale limitation of subdivision (b) of section 10 and accorded protection to nontendering security holders, targets and offerors in tender offer situations. (See Aranow & Einhorn, Tender Offers For Corporate Control, pp 116-117.)

. In its preface the information alleges that Florentino knew that the inside information, when announced, would cause a rise in the market price. Because of this knowledge, he made his purchases without disclosing the inside information. This is alleged, inter alia, to constitute a deception, a concealment and a suppression for the purpose of profit from the exchange, sale, and purchase of securities. The conclusion is inescapable that his market purchases at a time of his knowledge and suppression of inside information amount to intentional fraud. Indeed, the words “concealment” and “suppression” connote active, intentional acts.

. It has been suggested that a willfulness requirement is satisfied, in cases where the violation is an untrue statement or an omission, if the defendant has knowledge of the falsity or omission. Gross indifference equates with knowledge (Note, 31 Okla L Rev 486, 499).

. Section 12 (as amd) reads in pertinent part:
“Any person who —
«(y ** * *
“(2) offers or sells a security * * * by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact * * *
“shall be liable to the person purchasing such security from. him”. (Emphasis added.)
See, also, section 352 of the New York General Business Law which limits fraud in the purchase, exchange or sale of securities to a fraud “upon the purchaser.” This limitation is missing from section 352-c when it refers to inducing or promoting the “exchange, sale * * * or purchase” of securities.