OPINION OF THE COURT
Howard E. Bell, J.
Dean Thomas, one of the defendants named in an indictment charging, inter alia, conspiracy in the fifth degree, *650 scheme to defraud in the first degree, grand larceny in the second degree and fraud in the sale of securities moves this court for an order dismissing the tenth count of the indictment, which charges fraud in the sale of securities, on the ground that the Attorney-General of the State of New York did not have the authority to obtain the indictment.[1] Defendant Thomas further contends that upon dismissal of the tenth count, the court must dismiss the remaining counts of the indictment which pertain to him because the Attorney-General can only pursue such crimes in connection with the prosecution of the tenth count.
Prosecution under the tenth count is based on General Business Law § 352-c (6). This statute declares that ”[a]ny person * * * who intentionally engages in fraud, deception, concealment, suppression, false pretense or * * * who makes any material false representation or statement with intent to deceive or defraud, while engaged in inducing or promoting the issuance, distribution, exchange, sale, negotiation or purchase within or from this state of any securities or commodities, as defined in this article, and thereby wrongfully obtains property of a value in excess of two hundred fifty dollars, shall be guilty of a class E felony.” General Business Law § 358 *651 empowers the Attorney-General to prosecute violations of section 352-c (6). In relevant part, that statute states, "[t]he attorney-general may prosecute every person charged with the commission of a criminal offense in violation of the laws of this state, applicable to or in respect of the practices or transactions which in this article are referred to as fraudulent practices.” With respect to the additional counts of the indictment, the courts have held that the Attorney-General has the authority "to present evidence to the Grand Jury of facts which establish criminal offenses, i.e., larceny, forgery, etc., which are uncovered as a result of any investigation into fraudulent practices in the securities field”. (People v Stern, 86 Misc 2d 101, 103; see also, People v Sommer, 77 Misc 2d 840, 846-847.)
The primary issue raised by defendant Thomas’ assertions regarding the tenth count is whether the transaction involving the artworks allegedly sold and/or offered for sale by defendant Thomas was a transaction involving a security.
While no relevant specific definition of the term security is set forth in General Business Law article 23-A (the Martin Act), section 352 of such act does describe a broad catch-all category of securities as "any stocks, bonds, notes, evidence of interest or indebtedness or other securities” (emphasis added). Interpreting the Martin Act, the Court of Appeals has held that it is to be "liberally construed to give effect to its remedial purpose of protecting the public from fraudulent exploitation in the offer and sale of securities”. (All Seasons Resorts v Abrams, 68 NY2d 81, 86-87; People v Federated Radio Corp., 244 NY 33, 38.)
In Securities & Exch. Commn. v Joiner Corp. (320 US 344, 351), the United States Supreme Court,[2] in determining whether a transaction involved a security, noted that: "the reach of the Act does not stop with the obvious and commonplace. Novel, uncommon, or irregular devices, whatever they appear to be, are also reached if it be proved as a matter of fact that they were widely offered or dealt in under terms or courses of dealing which established their character in commerce as 'investment contracts,’ or as 'any interest or instrument commonly known as a "security”.’ ” (See also, Matter of Gardner v Lefkowitz, 97 Misc 2d 806, 813.) As early as 1936, *652 in Matter of Waldstein (160 Misc 763, 766-767), the court noted that the "term 'security’ has no exactly defined legal definition * * * In general, it may be said that any form of instrument used for the purpose of financing and promoting enterprises, and which is designed for investment, is a security according to the modern meaning of that term.”
Mindful of this policy of broad construction, the New York State courts have adopted the investment contract test set forth in Securities & Exch. Commn. v Howey Co. (328 US 293, 298-299; see, All Seasons Resorts v Abrams, supra, at 92; Matter of Gardner v Lefkowitz, 97 Misc 2d, at 813). In Howey, the United States Supreme Court, noting that investment contracts are securities, defined an investment contract as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party”. (Securities & Exch. Commn. v Howey Co., 328 US 293, 298-299, supra.) Later, this test was modified to apply even if an investor is led to expect profits substantially rather than solely from the efforts of the promoter or third party. (See, Securities & Exch. Commn. v Turner Enters., 474 F2d 476; Matter of Gardner v Lefkowitz, 97 Misc 2d 806, supra.) Utilizing the Howey test, New York State courts have permitted the Attorney-General to maintain actions in cases involving the purchase of diamonds (Matter of Gardner v Lefkowitz, 97 Misc 2d 806, supra), commodity futures options (People v Stern, 86 Misc 2d 101, supra), and silver coins (People v Monex, Intl., NYLJ, July 26, 1974, at 2, col 3).
Applying the Howey test to the case at bar, this court holds that the transaction allegedly solicited and closed by defendant Thomas involved an investment contract, and, therefore, involved a security within the meaning of the Martin Act. The purposes solicited by defendants involved investments; allegedly defendants not only distributed brochures which characterized prospective purchasers as investors, they also made statements to such purchasers which led them to expect large profits. Not surprisingly, the artworks were bought because purchasers believed defendants’ representations regarding their profitability. These investments were made into a common enterprise.[3] The common enterprise was created by the *653 purchasers’ reliance on the knowledge and expertise of the sellers to select the artworks purchased and in determining how long to retain them. Defendants solicited and encouraged such reliance through their urgings, recommendations and promises of rapid appreciation. Thus, the efficiency of defendants’ efforts were tied to the fortunes of all the investors. (See, Matter of Gardner v Lefkowitz, 97 Misc 2d 806-807, supra; Securities & Exch. Commn. v Brigadoon Scotch Distribs., 388 F Supp 1288.) Finally, the buy-back and guaranteed profit programs extended by defendants demonstrate that purchasers’ profits were to be derived from the efforts of the promoters or a third person.
Having determined that the transaction involving the artworks sold or offered for sale by defendant Thomas entailed an investment contract security, the court holds that the Attorney-General has authority to prosecute the tenth count and, accordingly, to pursue the additional counts charged against defendant Thomas. Moreover, despite defendant Thomas’ contention to the contrary, the court holds that the instant transaction involved commodities and commodity contracts as those terms are defined in the definition of registration requirements in General Business Law § 359-e (14) (a) (i) and (ii) and as the term commodity is used in General Business Law § 352-c (6).
The court also finds defendant Thomas’ alternative contentions regarding the tenth count without merit. Defendant asserts that the count should be dismissed because if the Martin Act is construed to be applicable to the artworks he allegedly sold and the transaction he purportedly engaged in, it is so overly broad as to be unconstitutionally vague under the Due Process Clause. A statute is void for vagueness only when it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute.” (United States v Harriss, 347 US 612, 617.) Measured under this standard and viewed in connection with the above-noted case law, it cannot be said that the Martin Act, as it pertains to this prosecution, is vague. (See, e.g., People v Florentino, 116 Misc 2d 692.) Finally, this court holds that jurisdiction has attached because defendant Thomas engaged *654 in an activity prohibited by General Business Law § 352-c (6) while "within or from this state”. Defendant Thomas’ motion to dismiss the tenth count is denied.
The remainder of the omnibus motion is disposed of in the following manner. That part of the motion which requests a bill of particulars is granted. Defendant Thomas’ request that the court inspect the minutes of the Grand Jury is granted on consent. The court having examined such minutes finds that (a) the Grand Jury proceedings were properly conducted, (b) the evidence before the Grand Jury was legally sufficient to support the charges contained in the indictment, and (c) the release of the Grand Jury minutes,. or any part thereof, to defendant Thomas is not necessary to assist the court in making its determination on this motion. The court also finds that the People have supplied defendant Thomas with the discovery material he is entitled to receive at this time. Defendant’s/motion for a severance is denied. Defendant Thomas’ speculative and conclusory assertions that his codefendant may testify on his behalf and that such testimony may be exculpatory does not create a sufficient basis for a severance. (People v Victory, 33 NY2d 75, cert denied 416 US 905.)

. The tenth count states:
"and the grand jury aforesaid, by this indictment, further accuses the defendants Roy Goldsmith and Dean Thomas, of the crime of fraud in the sale of securities in violation of Section 352-c (6) of the General Business Law of the State of New York, committed in the County of New York and elsewhere, as follows:
"The defendants, acting individually and in concert with each other, as well as with others, known and unknown to the Grand Jury, on or about October 16, 1984, intentionally engaged in fraud, deception, concealment, suppression, and false pretense, and made material false representations and statements, with intent to deceive and defraud, while engaged in inducing and promoting the distribution, sale, and purchase of securities within and from this state, and thereby wrongfully obtained property of a value in excess of $250 (two hundred fifty dollars), to wit:
"The defendants, acting individually and in concert with each other, as well as with others, known and unknown to the Grand Jury, on or about October 16, 1984, offered to sell and sold an investment contract for visual art objects produced in multiples, by falsely representing the nature and value of the investment and by fraudulently misrepresenting and concealing material facts bearing directly on the authorship of the images sold, the process by which the images were produced, the origin of the signatures on the image, and on the identity, background and relationships of the persons and entities that together offered the investment, with intent to deceive and defraud members of the public, and thereby wrongfully obtained property of a value in excess of $250 (two hundred fifty dollars).”

. New York State courts have found some Federal court decisions instructive when examining security questions. (See, All Seasons Resorts v Abrams, 68 NY2d 81, 87.)

. In arriving at its conclusion, this court is aware of recent Federal court decisions, i.e., Stenger v Love Galleries (741 F2d 144) and Mechigian v Art Capital Corp. (612 F Supp 1421), in which a more restrictive view of the *653 common enterprise prong of the Howey test was taken. This court, however, determines that New York State courts, and some Federal courts have adopted a more expansive approach. (See, e.g., Matter of Gardner v Lefkowitz, 97 Misc 2d 806; Glen-Arden Commodities v Costantino, 493 F2d 1027; Securities & Exch. Commn. v Brigadoon Scotch Distribs., 388 F Supp 1288.)