[614 NYS2d 811]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v FIRST MERIDIAN PLANNING CORPORATION et al., Respondents.

Third Department, July 21, 1994

**APPEARANCES OF COUNSEL**

*G. Oliver Koppell, Attorney-General,* New York City *(David C. Farman, Rebecca Mullane, Ray Cerreta* and *Christine Duisin* of counsel), for appellant.

*O'Connell & Aronowitz,* Albany *(Gloria Herron Arthur* and *Stephen R. Coffey* of counsel), for First Meridian Planning Corporation and others, respondents.

*Howard B. Arber,* Hempstead, for Neil Berman, respondent.

*Dreyer, Boyajian & Tuttle,* Albany *(William J. Dreyer* of counsel), for John W. Donovan, respondent.

*Borstein, Sheinbaum & Lurie,* New York City *(Leon Baer Borstein* of counsel), for Donald Kagin, respondent.

MERCURE, J.

I

Defendant First Meridian Planning Corporation (hereinafter Meridian) was incorporated in 1978 to sell real estate, and its articles of incorporation were amended in 1982 to allow for the sale of precious metals, works of art and securities. Meridian sales representatives, including defendants Norman Whitney, Thomas George and Kenneth Hemming, would attempt to obtain clients for Meridian's financial planning service, promising a financial plan suited to each individual's needs. Financial information obtained from clients was submitted to Meridian's advisory board, which included defendants Roger V. Sala, Roger C. Sala, John W. Donovan and Martin Hayden, who were purportedly experts in various investment fields. Although clients were led to believe that Meridian had a wide array of investment vehicles from which to choose, the same three types of investments, rare coins, artwork and condominiums, were recommended to all clients. Clients were also encouraged to purchase these products by placing a down payment and borrowing the balance.[1]

Defendant Meridian Arts, a subsidiary of Meridian, managed a handful of contemporary artists whose works were sold as a part of Meridian's financial plans. Defendant Donald Kagin was associated with defendants Kagin's Numismatics Investment Corporation (hereinafter KNIC), Kagin's Numismatics, Inc. (hereinafter KNI) and ADS Services, Inc. (hereinafter ADS), while defendants Joseph Saccento and Neil Berman were the principal shareholders of defendant Asset Services, Inc. (hereinafter Asset). These coin dealer defendants marketed leveraged numismatic coin portfolios as a part of Meridian's financial plans. With respect to the financial plans that it sold, Meridian did not disclose the large commissions paid both to Meridian and on the sales of the products to third parties, the relative nonliquidity of the investments and the volatility of and other risks associated with the markets in rare coins, artwork and condominiums.

The Attorney-General initiated an investigation and, after

---

1. During the years 1983 through 1986 Meridian sold a financial plan, routinely consisting of a leveraged numismatic coin portfolio, a leveraged art portfolio and a condominium, to some 800 investors who paid a total of $64 million.

extensive testimony, Meridian, Meridian Arts, Roger V. Sala, Roger C. Sala, Donovan, Hayden, Whitney, Hemming, George, KNIC, KNI, ADS, Asset, Saccento and Berman were indicted on one count of scheme to defraud in the first degree. In addition, various defendants were charged in the 39-count indictment with fraud in the sale of securities, grand larceny in the second and third degrees, failure to register as a commodity broker-dealer and failure to register as a commodity investment advisor. Following motions by various defendants, County Court, *inter alia,* dismissed the first count of the indictment against all opposing defendants, finding that the count was duplicitous, as well as all other counts against Kagin, Berman, Saccento and Asset.[2] The People appeal. A motion to dismiss a cross appeal by Meridian, Meridian Arts, Roger V. Sala and Roger C. Sala was granted by default.

## II

Initially, we reject the argument that count one of the indictment is void for duplicity. An indictment must provide fair notice of the charge and of the time and place of the conduct underlying the accusation so the accused can defend the charge and establish the defense of double jeopardy against a subsequent prosecution for the same offense *(see,* CPL 200.50; *People v Davis,* 72 NY2d 32, 38; *People v Keindl,* 68 NY2d 410, 418). "If a count charges more than one offense, it fails to meet these requirements and is void for duplicity [citations omitted]" *(People v Davis, supra,* at 38; *see,* CPL 200.30 [1]). The prohibition against duplicitous counts also seeks to prevent the possibility that individual jurors might vote to convict on a count on the basis of different offenses *(see, People v Davis, supra,* at 38; *People v Keindl, supra,* at 418). A count will not be found to be duplicitous, however, if the crime charged may by its nature "be committed either by one act or by multiple acts and readily permits characterization as a continuing offense over a period of time" *(People v Keindl, supra,* at 421; *see, People v Dunavin,* 173 AD2d 1032, *lv denied* 78 NY2d 965). In determining whether a particular count is duplicitous, a court will consider not only the indictment itself, as supplemented by any bill of particulars, but evidence presented to the Grand Jury as well *(see, People v*

---

2. References to "defendants" do not include KNIC, KNI, ADS and Hayden. These parties have been found guilty and do not appear on this appeal.

*Sulkey,* 195 AD2d 1026, *lv denied* 82 NY2d 759; *People v Corrado,* 161 AD2d 658, 659).

Here, count one of the indictment charged the crime of scheme to defraud in the first degree in violation of Penal Law § 190.65 against all defendants except Kagin. This statute proscribes obtaining property by engaging in "a scheme constituting a systematic ongoing course of conduct with intent to defraud * * * by false or fraudulent pretenses, representations or promises" (Penal Law § 190.65 [1] [a]). Further, if the property obtained is valued at $1,000 or less, an intent to defraud 10 or more persons must be established. Because this language contemplates a continuing offense, a count charging such a crime need not be limited to describing one act. We also reject defendants' claim that count one violates CPL 200.30 (1) by charging multiple schemes. New York courts have found Federal mail fraud decisions to be "highly relevant" in construing parallel language in the New York statute *(People v White,* 101 AD2d 1037, 1038; *see,* 18 USC § 1341), and the Federal courts have not found duplicity merely because the count alleges that a defendant schemed to defraud different people over an extended period of time using different means and representations *(see, United States v Mastelotto,* 717 F2d 1238, 1245; *Owens v United States,* 221 F2d 351, 354) or the scheme consists of "similar transactions, conducted by a constant nucleus with differing subordinates" *(United States v Crosby,* 294 F2d 928, 945, *cert denied sub nom. Mittelman v United States,* 368 US 984). The key to determining whether a count is duplicitous is whether the fraudulent activity falls within "one unitary 'scheme to defraud' " *(United States v Mastelotto, supra,* at 1244; *see, United States v Zemek,* 634 F2d 1159, 1167-1168, *cert denied sub nom. Carbone v United States,* 450 US 916).

In our view, count one of the indictment is not duplicitous either on its face or in consideration of the evidence before the Grand Jury. The indictment alleges that all defendants acted in the furtherance of one ongoing scheme "to obtain money from the public by offering for sale and selling condominiums, numismatic coins, and artworks as investments". It identifies the roles played by each defendant and states that two groups of coin dealer defendants "promoted and sold leveraged numismatic coin portfolios as investments to the public through [Meridian] as part of a financial plan". Nor does examination of the evidence before the Grand Jury support County Court's apparent finding that there was insufficient evidence to sup-

port this count. All defendants who were principals of or employed by Meridian were clearly a part of one scheme to defraud purported investors, failing to disclose not only commissions but also that the coins and artwork were purchased at retail prices and would sell at wholesale prices and that the appreciation charts supplied to clients indicated unrealistically high returns. While the coin dealer defendants were more removed from the Meridian sales operations, the evidence before the Grand Jury also supports the indictment of these defendants as a part of one general scheme initiated by Meridian, the coin dealer defendants seeking to profit from coin sales to clients without disclosing material information. The fact that one scheme existed is not changed because the coin dealer defendants profited from only part of the scheme *(see, United States v Crosby,* 294 F2d 928, 945, *supra).*

## III

■ Next, the People argue that County Court improperly dismissed the counts against the coin dealer defendants charging fraud in the sale of securities. Again, we agree. We note at the outset that the Martin Act should be liberally construed to give effect to its remedial purpose *(see, All Seasons Resorts v Abrams,* 68 NY2d 81, 86-87; Mihaly & Kaufmann, Practice Commentary, McKinney's Cons Laws of NY, Book 19, General Business Law art 23-A, at 9-13). We also note that in determining whether an interest is a security under General Business Law § 352 (1), it is appropriate to consider the decisions of the United States Supreme Court and other Federal courts construing the Federal Blue Sky Laws *(see, All Seasons Resorts v Abrams, supra,* at 87).

The Court of Appeals has applied two tests in determining whether an interest is a security under General Business Law § 352 (1) *(see, supra,* at 92-94). The first test was enunciated in the seminal case of *Securities & Exch. Commn. v Howey Co.* (328 US 293). In *Howey,* the United States Supreme Court, noting that investment contracts are securities, stated that "an investment contract * * * means a contract, transaction or scheme whereby a person [1] invests his money [2] in a common enterprise and [3] is led to expect profits solely from the efforts of the promoter or a third party" *(supra,* at 298-299). This test was later modified to apply even if an investor is led to expect profits *substantially* rather than solely from the efforts of others *(see, Securities & Exch. Commn. v Turner*

*Enters.,* 474 F2d 476, *cert denied* 414 US 821; Mihaly & Kaufmann, Practice Commentary, McKinney's Cons Laws of NY, Book 19, General Business Law art 23-A, at 14). The second test, first enunciated in *Matter of Waldstein* (160 Misc 763, 767), defines a security as "[1] any form of instrument used for the purpose of financing and promoting enterprises, and which is [2] designed for investment".

County Court found that the evidence did not support either the second or third prongs of the *Howey* test. It is well established, however, that "solely" should not be read literally and, as noted, it is sufficient that the efforts of the promoter "are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise" *(Securities & Exch. Commn. v Turner Enters., supra,* at 482). Thus, it is our view that the third prong of the test is met where, as here, investors have relied upon the expertise of a promoter to select a product to maximize the appreciation caused by market forces *(see, People v Thomas,* 134 Misc 2d 649; *see also, Eberhardt v Waters,* 901 F2d 1578; *Securities & Exch. Commn. v Brigadoon Scotch Distribs.,* 388 F Supp 1288). The second prong of the *Howey* test has been variously interpreted by the Federal courts. Some Federal circuits have held that a common enterprise requires "horizontal commonality", in which each investor's fortunes are tied to the success of the over-all venture by a pooling of assets and attendant pro rata distribution of profit and loss *(see, Salcer v Merrill Lynch, Pierce, Fenner & Smith,* 682 F2d 459; *Hirk v Agri-Research Council,* 561 F2d 96), while others have required either "strict vertical commonality" in which each investor's fortunes are tied to the promoter's fortunes without pooling of assets *(see, Revak v SEC Realty Corp.,* 18 F3d 81, 87-88; *Meyer v Thomas & McKinnon Auchincloss Kohlmeyer,* 686 F2d 818, *cert denied sub nom. Meyer v Thomson & McKinnon Auchincloss Kohlmeyer,* 460 US 1023) or "broad vertical commonality", which requires only that the fortunes of the investor be linked to the efforts of the promoter but not that the promoter's fortunes be so linked. That is, there must be a direct nexus between the efforts of the promoter and the return on the investor's investment *(see, Securities & Exch. Commn. v Koscot Interplanetary,* 497 F2d 473, 479; *see also, People v Thomas, supra; Matter of Gardner v Lefkowitz,* 97 Misc 2d 806).

To be sure, the facts of the present case do not support either "horizontal commonality" or "vertical commonality" under the more restrictive definition. There was no pooling of

assets and the success of defendants' financial planning efforts was not dependent upon the investors' ultimate success or failure with their investment. We believe, however, that application of the "broad" vertical commonality approach is consistent with the liberal interpretation to be given to the Martin Act to give effect to its remedial purpose *(see, All Seasons Resorts v Abrams,* 68 NY2d 81, *supra),* and this is an interpretation that New York courts have given the *Howey* test *(see, e.g., People v Thomas, supra,* at 652, n 3; *Matter of Gardner v Lefkowitz, supra,* at 815; *but see, People v Fleishman,* 163 AD2d 148, *lv denied* 76 NY2d 939).

Moreover, it is an interpretation that is appropriate here, where defendants, acting in concert, led investors to believe that they were buying an opportunity to participate in an investment program and the coin dealer defendants selected the coins which comprised the portfolios, controlled transaction costs, provided the financing of the leveraged deals, arranged for storage and offered assistance with resale. Furthermore, the services and expertise offered by defendants exceed those offered in *Matter of Waldstein* (160 Misc 763, *supra)* and thus meet the test enunciated therein. It is significant that in this case investors obtained title to but not possession of the coins, which were held either by the coin dealer defendants or lenders as security. Oversight was entirely taken care of by defendants; all the investor needed to do was make the down payment and subsequent interest payments on the borrowed portion of the investment.

## IV

■ We now turn to the People's argument that County Court improperly dismissed the larceny charges against the coin dealer defendants, restricting the scope of our review to whether the evidence, if taken as true and viewed in a light most favorable to the People, establishes every element of the offenses charged *(see, People v Jennings,* 69 NY2d 103, 115). First, our review of the Grand Jury testimony demonstrates that the evidence of the value of the property allegedly taken was sufficient with respect to all charges except counts 21 and 27 *(see,* Penal Law § 155.35; *People v Altman,* 83 Misc 2d 771; *see also, People v Hunter,* 34 NY2d 432, 438-440). The indictment as to counts 21 and 27 should therefore be reduced to grand larceny in the fourth degree *(see,* CPL 210.20). Second, although the mere failure to disclose information is not usu-

ally sufficient to establish larceny by false pretenses *(see, People v Baker,* 96 NY 340, 349), the failure of a seller of securities to disclose every material fact may be the basis of a larceny conviction *(see, State of New York v Rachmani Corp.,* 71 NY2d 718; *People v Rosenstein,* 92 Misc 2d 1069; *Matter of State of New York v ITM, Inc.,* 52 Misc 2d 39, 48). Third, given the omissions in their companies' brochures, together with the other evidence before the Grand Jury, we reject the arguments of Kagin and Berman that an intent to deprive others of property may not be inferred here. Last in this regard, the fact that property was obtained by corporations in which Kagin had an interest, as well as by corporations in which Berman had an interest, rather than by the individuals themselves, does not preclude a finding of criminal liability against Kagin and Berman *(see,* Penal Law § 20.25; Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 20.25, at 72).

## V

■ Finally, the People argue that County Court improperly dismissed counts 38 and 39 of the indictment, which charge the failure to register as a commodity broker-dealer in violation of General Business Law § 359-e (14) (k), against the coin dealer defendants. We disagree. Because an indictment must contain a factual allegation of every element of a crime charged (CPL 200.50 [7]), it must allege that the crime is not within any exception to the offense contained within the statute defining the offense *(People v Kohut,* 30 NY2d 183, 187; *People v Best,* 132 AD2d 773). Here, the indictment did not allege the inapplicability of 13 NYCRR 13.1, which excludes from the definition of commodities certain sales of rare coins. Because the statutory language, " '[c]ommodity' means, except as otherwise specified by the attorney general by rule, regulation or order" (General Business Law § 359-e [14] [a] [i]), excludes something from its ambit absolutely, an exception rather than a proviso is involved *(see, People v Hosier,* 19 Misc 2d 1065; *see also, People v Devinny,* 227 NY 397; McKinney's Cons Laws of NY, Book 1, Statutes § 211).

We have reviewed the remaining contentions and find them to be without merit.

MIKOLL, J. P., WHITE, CASEY and YESAWICH JR., JJ., concur.

Ordered that the order is modified, on the law, by reversing so much thereof as dismissed the first count of the indictment

and the counts of fraud in the sale of securities, grand larceny in the second degree and grand larceny in the third degree; said counts are reinstated and counts 21 and 27 of the indictment are reduced to grand larceny in the fourth degree; and, as so modified, affirmed.